Plaintiffs shall submit judgments to the Court within 10 days after consultation with defendant.

**Ralph BATOVICH, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 67–1214.**

United States District Court
W. D. Pennsylvania.

June 24, 1968.

Bureau of Disability Insurance, an application to establish a period of disability under § 216(i) of the Social Security Act, as amended 42 U.S.C.A. § 416(i), and an application for disability insurance benefits under § 223 of the Act, 42 U.S.C.A. § 423, alleging that he became unable to engage in any substantial gainful activity on June 27, 1963.

A final and binding decision of the Secretary on a prior application, however, determined that plaintiff was not under a disability through June 16, 1965, and at the hearing on his present application plaintiff amended his claims to allege disability commencing subsequent to June 16, 1965.[1]

Plaintiff's claims were denied by the Bureau, and at plaintiff's request a hearing was held before a hearing examiner of the Social Security Administration, Bureau of Hearings and Appeals, who also denied plaintiff's claims. The Appeals Council of the Social Security Administration granted plaintiff's request for review and obtained additional evidence. On September 20, 1967, the Appeals Council advised plaintiff of its decision supplementing and affirming the hearing examiner's decision; whereupon, pursuant to § 205(g), plaintiff commenced this action to obtain a judicial review of the Secretary's decision[2] denying plaintiff's claims. With his answer to plaintiff's complaint, defendant filed a certified copy of the transcript of the record of the proceedings before the Social Security Administration in compliance with § 205(g) of the Act, supra, and subsequently moved for summary judgment.

Ralph J. Talarigo, Portage, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., by Vincent A. Colianni, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

On January 10, 1966, plaintiff filed with the Social Security Administration,

---

1. Plaintiff's prior application, filed July 11, 1963, alleged he became unable to work June 27, 1963, due to silicosis. By notice dated June 16, 1965, the Appeals Council denied plaintiff's request for review of the hearing examiner's decision denying his claim. Since no civil action was commenced to obtain judicial review, the examiner's decision became final and binding on the issue of disability through June 16, 1965.

2. Since the Appeals Council of the Social Security Administration made supplemental findings in affirming the decision of the hearing examiner, the Council's findings of fact became the findings of the Secretary under § 205(g) of the Act. Cf. Hodgson v. Celebrezze, 312 F.2d 260, 261 (3d Cir. 1963), citing Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957).

Section 205(g), supra, provides in its pertinent part as follows:

"As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under § 205(g) and under the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957); Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956). "Our judicial duty therefore is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. [Citations omitted.]" Boyd v. Folsom, 257 F.2d 778, 781 (3d Cir. 1958). See also, Braun v. Ribicoff, 292 F.2d 354, 357 (3d Cir. 1961).

Section 223(d) of the Act, 42 U.S.C.A. § 423(d), as added by the "Social Security Amendments of 1967", § 158(b), 81 Stat. 868, defines "disability" for purposes of governing disability insurance benefits as follows:

"(d)(1) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;[3]

" * * *

"(2) For purposes of paragraph (1)(A)—

"(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 202(e) or (f)) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

" * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

" * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

---

3. Section 303(a) of Public Law 89–97, July 30, 1965, amended §§ 216(i) and 223 of the Social Security Act by substituting "to last for a continuous period of not less than 12 months" for the former requirement that an individual's impairment must be expected "to be of long-continued and indefinite duration". The Appeals Council decided plaintiff's case under both the prior law and the Amendments of 1965.

" * * *."

The definition of "disability" under § 216(i) (1) of the Act, 42 U.S.C.A. § 416(i) (1), as amended by § 158(d), 81 Stat. 869, is the same.

The above amendments, approved January 2, 1968, are made applicable to the present case by § 158(e), 81 Stat. 869, which provides that the amendments "shall be effective with respect to applications for disability insurance benefits under section 223 of the Social Security Act, and for disability determinations under section 216(i) of such Act", where the decision in a civil action commenced under section 205(g) has not become final before the month of their enactment.

Plaintiff is a 57-year-old former coal miner who left school at about age 14, just prior to completing the fourth grade. From that time he worked in the mines, first as a loader, timberman, driller, spragger and cutter, and, later, during the last 10 years, as a motorman operating an electric locomotive hauling coal cars in and out of the mine. As early as 1959, plaintiff was told by a physician that he had silicosis and advised to get out of the mines. His condition progressively worsened and on June 27, 1963, he quit the mines and has not worked since. Plaintiff is married and lives with his wife and one child who is still living at home.

This appeal is from the findings and decision of the Appeals Council supplementing and affirming the hearing examiner's decision. After reviewing the evidence, the Appeals Council found that the "claimant has second stage anthracosilicosis with early hypertrophic emphysema, but retains sufficient pulmonary capacity for substantial gainful activity in the absence of excessive dust and fumes"; that the "evidence fails to establish any other significant physical or mental impairment which would preclude the claimant from engaging in substantial gainful activity"; that the "claimant retains the physical and mental capacity to perform work such as bench hand, assembler, lot chaser, watchmen [sic] and shipments marker, etc., in a normally dust and fume free atmosphere"; and that "such jobs exist in the claimant's local area." The Appeals Council ultimately found that the "evidence fails to establish that the claimant's impairment prevented him from engaging in substantial gainful activity commencing at any time prior to the date of this decision."

We have reviewed the record and in our opinion the decision of the Appeals Council is not supported by substantial evidence.

The evidence of plaintiff's impairments for the period after June 16, 1965 [4] comprises the reports of two

---

4. As heretofore noted, the Secretary's decision is final that plaintiff was not under a disability within the meaning of the Act through June 16, 1965. In the period ending with that date, plaintiff was examined by Dr. Faden, a general practitioner, Dr. Anderson, Dr. Bradley and Dr. Goldman, specialists in internal medicine, and by Dr. Dugan, a psychiatrist, who found no evidence of mental incompetence but noted a mild anxiety reaction.

In August, 1963, Dr. Anderson felt plaintiff had a substantial decrease in his pulmonary function as a result of anthracosilicosis and accompanying pulmonary emphysema, but that plaintiff could do some light work where he would not be exposed to coal or silica dust.

Dr. Faden examined plaintiff in December, 1963, May, 1964 and July, 1964. Initially, Dr. Faden diagnosed anthracosilicosis and pulmonary emphysema which he described as chronic, organic and irreversible. In May, 1964, he noted that changes of age were being added to the organic, irreversible changes of lung disease. In August, 1964 (reporting the July examination), Dr. Faden concluded that plaintiff could resume work "only if temperature, humidity, dust and smoke were controlled as in a laboratory setting" and that plaintiff "could do an extremely sedentary job in ideal weather conditions."

In March and May, 1963, Dr. Goldman's studies indicated silicosis, emphysema, and pulmonary fibrosis.

Dr. Bradley examined plaintiff's thorax and lungs in November, 1964 and failed to find evidence of any significant complicated pulmonary disease, concluding that

specialists in internal medicine, two psychiatrists, a psychologist, and a psychiatric social worker. In March of 1963, Dr. Goldman had diagnosed silicosis, emphysema, and pulmonary fibrosis; in a report of February, 1966, he noted that pulmonary function studies of July 14, 1965 showed progression of plaintiff's disease. Dr. Bradley, in a report of an examination of April 4, 1966, diagnosed anthracosilicosis, second stage, with early hypertrophic emphysema; chronic anxiety reaction with probable depressive features; and hyperventilation syndrome. Dr. Bradley expressed the opinion that plaintiff's ventilatory capacity and pulmonary reserve were good, and that most of plaintiff's symptoms were of psychosomatic origin and not related to intrinsic pulmonary or other organic disease. He suggested a psychiatric evaluation might be considered.

Dr. Bell, a psychiatrist and neurologist, submitted a report dated May 3, 1966, which did not support Dr. Bradley's conclusion that plaintiff's symptoms were substantially non-physical in origin. He observed that plaintiff fixated on his physical disability and that this restricted his activities to some degree, but found no neurotic defenses apparent, and no evidence of psychoneurosis or psychosis. He concluded that plaintiff's symptomatology most likely resulted from physical disease and did not feel that plaintiff would be able to work again because of his symptoms.

On this medical record, plus the testimony of a vocational consultant which we shall later consider, the hearing examiner found plaintiff not disabled under the Act. When plaintiff sought a review of this decision, the Appeals Council obtained additional evidence from another psychiatrist, Dr. Goshorn, and from a psychologist, Dr. Teris, and a psychiatric social worker, Mrs. Glosser. Dr. Goshorn examined plaintiff on three occasions and reviewed the findings of the psychologist and concluded that plaintiff was mentally normal and free of any psychiatric condition or mental or nervous disease.[5]

After an interview with plaintiff, Mrs. Glosser, a psychiatric social worker, was "doubtful that this man would have any motivation for work although it appears that he could be productive in some simple task under supervision in a sheltered workshop."

The non-physical limitations upon plaintiff's ability to do gainful work were examined and described by Dr. Teris, a psychologist. Dr. Teris' report pictures plaintiff as one whose "Full

plaintiff's ventilatory capacity and pulmonary reserve were good and that most of plaintiff's complaints were related to chronic anxiety and reactive depression rather than to significant organic disease.

Based on a study of the exhibits in the complete record, a vocational consultant initially testified that plaintiff could not be gainfully employed anywhere in the United States. The consultant was then asked if his answer would be the same, assuming that the examiner found that plaintiff's ventilation functioned as expressed by Dr. Bradley. The consultant then stated that plaintiff would be capable of some light-duty work, and gave five examples, indicating these were representative of a group of perhaps 20 job titles of this nature in the area. When pressed by the hearing examiner, the consultant named several other light jobs he thought plaintiff could do. On cross-examination, he stated that he changed his answer because one of the exhibits stated plaintiff could do a light or sedentary type of work. On this record, the examiner concluded that plaintiff had a sufficient physical and mental capacity to do many forms of light or sedentary work and therefore was not under a disability. The Appeals Council decided that the decision of the hearing examiner was correct. No action was commenced to obtain judicial review of that decision.

5. Dr. Goshorn offered a number of comments and opinions on plaintiff's pulmonary impairments, which he did not think severe. These comments, which were outside Dr. Goshorn's specialty, were based on office examinations without benefit of X-rays or ventilation studies. The decision of the Appeals Council gives no indication that the Council relied upon these opinions to support its findings.

Scale I.Q. of 79 indicates that he generally surpasses but 8% of his peer group" and whose capacity for reading and arithmetic shows a fourth-grade proficiency. Dr. Teris graded plaintiff "low" in "familiarity with mechanical situations" and "eye-hand coordination"; "very low" in "spacial visualization"; and "extremely low" in "discrimination of similarities and differences in non-verbal materials". When "compared to work-area requirements", these aptitudes placed plaintiff "at the lowest rung of the minimum qualification group for all job families below skilled worker level within the mechanical family of jobs." In Dr. Teris' opinion, plaintiff would be "an under-producer, even at the unskilled worker level." Dr. Teris noted, however, that greater aptitude would normally be expected and "suspected that the personality configuration is impairing the available aptitude strength." He noted also "suggestions that there are many more conscious components than this man might be prepared to admit." Dr. Teris' conclusion was that plaintiff could be considered "only at the unskilled or semi-skilled worker level in the mechanical family of jobs."

No dispute exists that plaintiff is physically unable to do coal mining again. But the Appeals Council found that "claimant retains the physical and mental capacity to perform work such as bench hand, assembler, lot chaser, watchmen [sic] and shipments marker, etc. in a normally dust and fume free atmosphere." In so concluding the Council relied upon the testimony of a vocational consultant, Dr. George A. W. Stouffer, Jr., an educator and specialist in the placement of handicapped persons.

In our opinion the testimony of Dr. Stouffer does not present substantial evidence to support the Council's finding. The hearing examiner told Dr. Stouffer:

"* * * [A]fter considering the claimant's age, education and work experience, I want you to assume that the claimant has anthracosilicosis, but that this condition is moderate in its effect and, specifically referring to Dr. Bradley's report on April 13, 1966, which is Exhibit B–46 in evidence, he describes the claimant's mechanics of breathing as good and his ventilatory capacity and pulmonary reserve as good; I want you to assume that."

Counsel for plaintiff subsequently objected to this assumption "on the basis that it was only one item, actually, taken out of Dr. Bradley's report". The hearing examiner also told the vocational consultant:

"* * * [I]n the listing of your jobs, if any, I want you to screen these jobs in terms of extreme cold, heat, wet, humid, fumes, odors, toxic conditions or dust, as well as arduous labor".

The vocational consultant asked for a two-minute recess to prepare his opinion in light of this latter restriction. Afterward, he produced from the Dictionary of Occupational Titles a list of seven jobs "representative of the types of jobs that are in existence in the geographical area, which might be performed by Mr. Batovich." Subsequent cross-examination by plaintiff's counsel drew concessions from Dr. Stouffer that jobs of bench hand, assembler, parking lot attendant and watchman would frequently involve exposure to dust and fumes or extremes of weather which would make them unsuitable for plaintiff. Dr. Stouffer also conceded that, by his estimate, 75% of all bartender jobs entailed heavy lifting which plaintiff could not do. The other two jobs suggested were lot chaser, which appeared not at all sedentary as described by the consultant, and stenciler (or marker), which at least implies working with potentially irritant substances such as paints or inks.

Cross-examination of Dr. Stouffer thus made considerable inroads on his testimony. The result was to create a serious doubt that plaintiff could in fact do the jobs Dr. Stouffer listed in

the actual atmosphere and under the actual working conditions that normally exist for such jobs. His support for his opinions, when he did not retract them, was sketchy, perhaps because his testimony ultimately had to be based on a hurried review of his notes and references during a brief recess in the hearing. Dr. Stouffer also conceded on cross-examination that, confronted with the medical impressions contained in Dr. Bradley's report and Dr. Bell's observation that he did not think plaintiff would be able to work again, he would be compelled to withdraw all these jobs. He stated that this was because of Dr. Bell's statement and not because Dr. Bradley's impressions of plaintiff's organic condition necessarily precluded work.

Cross-examination left little of Dr. Stouffer's testimony intact and what remained was further undermined rather than supported by the findings of Dr. Teris who based his observations on aptitude and other tests which resulted in ratings of "low", "very low" and "extremely low" in various aptitudes. Dr. Stouffer did no testing of plaintiff, but based his opinion solely on his own references and the exhibits then of record. It may be added that none of the supplemental reports obtained by the Appeals Council which include Dr. Teris' analysis contributes new objective evidence that plaintiff is qualified to do some gainful work to the facts which were already of record at the time of Dr. Stouffer's testimony at the hearing.

 The mere suggestion of a possibility of employment, contained in opinion testimony patently theoretical and speculative in nature, is not substantial evidence in the face of formidable factual evidence of disability within the meaning of the Act. Such formidable factual evidence of disability appears in the combination of factors present: plaintiff's acknowledged inability to do his life-long work of coal mining; his undeniable physical impairments which, no one questions, rule out all non-skilled heavy physical labor; his age; his rudimentary education; his restricted work experience; his limited intellect and limited manual aptitudes.[6] For this reason, in our opinion, the decision of the Secretary must be reversed.

An appropriate order will be entered.

---

**6.** Cf. claimant's similar occupational and medical background and the conclusions of the court in Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967) and in Dabravalskie v. Gardner, 281 F.Supp. 919 (E. D.Pa.1968).