**Luis TORRES**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare.**

**Civ. A. No. 80–1552.**

United States District Court, E. D. Pennsylvania.

Dec. 4, 1980.

---

Michael M. Goss, Weinstein, Goss & Katzenstein Associates, P. C., Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., James G. Sheehan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action is brought under Sections 205(g) and 1631(c)(3) of the Social Security Act as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final decision of the Secretary of Health, Education and Welfare denying the claimant disability benefits. The decision rendered by the Administrative Law Judge on February 7, 1980 became the final decision of the Secretary in this case when affirmed by the Appeals Council on March 25, 1980. This final decision holds that the claimant is not entitled to disability insurance benefits under §§ 216(i) and 223, respectively, of the Social Security Act as amended, 42 U.S.C. § 416(i) and 423, nor to Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. § 1381a. This matter is before us on cross motions of the parties for summary judgment. In the alternative, the claimant has requested that the record of the case be remanded to the Secretary, and he has in-

troduced new evidence in support of this request.

The role of the courts in reviewing the Secretary's decisions is narrowly circumscribed. Before June 9, 1980, Title 42 U.S.C. § 405(g) provided in pertinent part that:

> The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.... The court ... may, at any time, on good cause shown, order additional evidence to be taken before the Secretary.

The Social Security Disability Amendments of 1980, Pub.L.No.96–265, § 307, 94 Stat. 458 (1980), effective on June 9, 1980, the date of enactment, H.R.Conf.Rep.No.944, 96th Cong.2d Sess., 59, *reprinted in* [1980] U.S.Code Cong. & Ad.News, pp. 2481, 2596, 2611, modified the "good cause shown" provision as follows:

> The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; ...

The House Report clarifies this provision by stating that

> it is not to be construed as a limitation of judicial remands currently recognized under the law in cases which [sic] the Secretary has failed to provide a full and fair hearing, to make explicit findings, or to have correctly apply [sic] the law and regulations.

H.R.Rep.No.100, 96th Cong.2d Sess., 13. Rather, as in the Senate the concern focused on "remands ... made because the judge disagrees with the outcome of the case which he might have to sustain under the 'substantial evidence rule.'" *Id.*; S.Rep.No.408, 96th Cong.2d Sess. 58, *reprinted in*, [1980] U.S.Code Cong. & Ad. News, pp. 2481, 2540. But a Senate proposal to further restrict the scope of judicial review by replacing this rule with one requiring that the Secretary's factual determinations be held "final, unless found to be arbitrary and capricious," *id.* at 59, [1980]

U.S.Code Cong. & Ad.News at 2541, was rejected by a Congressional Conference Committee which, however, exhorted the courts to "interpret the substantial evidence rule with strict adherence to its principles." Subcommittee on Social Security of the House Committee on Ways and Means, 96th Cong.2d Sess., Disability Amendments of 1980–H.R. 3236, 8 (Comm. Print 1980). Thus, if a decision of the Secretary is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971), and is otherwise unobjectionable, *see* H.R.Rep.No.100, 96th Cong.2d Sess., 13, *quoted above*, it must be affirmed unless the claimant can meet the requirements of the new remands provision of 42 U.S.C. § 405(g), *quoted above*.

With these considerations in mind, and after careful study of the record, briefs, and new evidence presented by the claimant, this Court concludes, for the reasons that follow, that judgment must be given for the Secretary.

To qualify for disability insurance benefits (DIB) under Sections 223 and 216(i) of the Social Security Act, 42 U.S.C. §§ 423, 416(i), an individual must meet the insured status requirements of these Sections, be under age 65, file an application for disability insurance benefits and be under a "disability" as defined by the Act. The term "disability" is defined in Section 223 as:

> (d)(i) ...
>
> (A) inability to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
>
> (B) ...
>
> (2) For purposes of paragraph (1)(A)—
>
> (A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual) "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

In order to qualify for Supplemental Security Income (SSI) benefits on the basis of disability under Section 1602 of the Social Security Act, 42 U.S.C. § 1381a, an individual must file an application for SSI benefits based on disability and must be an "eligible individual" as defined in the Act.

The term "disabled individual" as used in Section 1611(a) of the Act is defined in Section 1614(a) of the Act, 42 U.S.C. § 1382c(a) in language identical to Section 223 quoted above.

The claimant has the burden of establishing that he was disabled within the meaning of the Social Security Act, § 223(d)(5), 42 U.S.C. § 423(d)(5); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972); *Gardner v. Richardson*, 383 F.Supp. 1 (E.D.Pa.1974). In order to establish a disability, a claimant must prove, first, that he has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, and, second, that the impairment renders him unable to engage in any substantial gainful employment, *Baker v. Gardner*, 362 F.2d 864 (3d Cir. 1966); *Bujnovsky v. Celebrezze*, 343 F.2d 868 (3d Cir. 1965); *Powell v. Richardson*, 355 F.Supp. 359 (E.D.Pa.1973).

In determining whether a person is able to engage in any substantial gainful employment, there are four elements of proof which the Secretary must consider: (1) objective medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) claimant's age, educational background and work history. Sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d)(2)(A); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Dillon v. Celebrezze*, 345 F.2d 753 (4th Cir. 1964); *Barats v. Weinberger*, 383 F.Supp. 276 (E.D.Pa.1974); *Valenti v. Secretary of HEW*, 350 F.Supp. 1027 (E.D.Pa. 1972).

The claimant, Luis Torres, was born on April 13, 1948 in Puerto Rico. He has no education or vocational training beyond the fifth grade and cannot read or write Spanish well or English at all. His work history began with his arrival in the continental United States about eleven years ago and includes employment on a farm picking tomatoes, at a gas station as a pump attendant, in a clothing factory as a dry cleaner loader, and, finally, as a glaze maker and bulk carrier at a porcelain enterprise. The claimant denies having worked for pay since losing his job at this enterprise in February, 1977. Although his application for DIB and SSI benefits alleges that he was already then disabled, he did not file it until January 3, 1979, after obtaining unemployment compensation from April, 1977 to April, 1978. Upon evaluation of the medical evidence by a physician and disability examiner, the claimant was found not to be under a disability by the state agency and this decision was affirmed on reconsideration. The claimant, represented by counsel, had a *de novo* hearing before an Administrative Law Judge on January 29, 1980. The Administrative Law Judge made his decision on February 7, 1980, finding that the claimant was not under a disability. After reviewing the medical evidence and the testimony, it was concluded that the claimant's impairments and symptomatology, either singly or in combination were not so severe as to prevent him from engaging in all substantial work activity.

The claimant introduced no documentary evidence as to his medical condition during the period in which he was receiving unemployment compensation. His first documented complaint dates from June, 1978

when he visited Dr. Lucas for back problems, chest and leg pains, frequency with burning, and other ailments. The doctor prescribed medication but an EKG and an x–ray examination of the claimant's chest, pelvis, and lumbrosacral spine region disclosed no underlying disorders. The claimant continued to visit Dr. Lucas during the latter half of 1978 and during 1979, complaining of back pains, left sciatic area pains, defective hearing, and asthma.

On January 11, 1979, shortly after filing his application for DIB and SSI benefits, the claimant was examined by Dr. Lynn Sumerson, an ear, nose and throat specialist. The doctor found that the claimant suffered from "upper respiratory infection, psychogenic overlay." The claimant was later admitted to Metropolitan Hospital in Philadelphia for a submucous resection of the nasal septum, bilateral infracture of the middle turbinate bodies, and a right Caldwell–Luc. His stay in the hospital was uneventful and he was discharged with the final diagnosis of chronic sinusitis and right antral cyst.

During the same month the claimant was also examined by three eye specialists. In his report of May 31, 1979, Dr. Christopher A. Rinehart, one of the examining specialists, summarized their findings. The claimant's best corrected visual acuity was found to be 20/100 in the left eye with no light perception in the right. Intraocular pressure was normal in both eyes and both showed congenital staphylomas (outward bulgings) at their posterior poles. The claimant's pupils were equal and fully reactive, showing a +1/+4 Marcus Gunn reaction. Although visual fields in his left eye showed a marked restriction to 2°, using hand movements as targets, the claimant was able to ambulate without obvious difficulty, a finding which the report characterizes as being "inconsistent with 2° visual fields." Noting further that "optokinetic [sic] nystagmus, an involuntary reflex measure of visual function was surprisingly normal in both eyes," the report concludes that the claimant "definitely does have a significant visual impairment although our impression is that he does see somewhat better than the subjective testing indicates."

Dr. Rinehart's report apparently relies on the findings of Dr. Michael M. Cohen, which are summarized in a letter written by Dr. Cohen to Dr. Edward A. Deglin, the referring physician. In addition to the tests mentioned above, Dr. Cohen subjected the claimant to "the obscenity test". Claimant was shown a 3″ by 5″ card on which the doctor had written "schoolboy" in 20/50 size letters. The claimant stated that he could not read the word. On the other side of the card the doctor had written an obscenity; when he turned the card over the claimant paused and smirked, indicating that he was able to read that word. Dr. Cohen concluded that although the claimant suffered from congenital tilted disc syndrome and functional amblyopia, "[h]e clearly sees better than he thinks he sees."

In February, 1979 the claimant was given a general medical examination by Dr. Jerry Ginsberg. As the Administrative Law Judge noted, the bulk of the exam results were within normal limits. In particular, Dr. Ginsberg found no evidence of any hearing loss, and, in evaluating the claimant's physical capacities, found him able to perform a normal range of physical activities. The doctor also found the claimant to be mentally alert and competent and his intellectual functioning to be good.

Thereafter, the claimant visited Dr. Lucas on various occasions in 1979 for complaints such as back pain, rectal itch, gastritis, and colds.

Finally, the claimant's eyes were again examined by eye specialists on May 7 and July 11, 1980. The results of these examinations, as reported in a letter dated August 20, 1980 by Dr. Dennis J. Khoury, Director, Retina Service, Hahnemann Eye Associates, differ significantly from the findings reported by Dr. Rinehart, *supra*. However, as Dr. Khoury's letter was not before the Administrative Law Judge or Appeals Council, it will be considered separately following a review of the Secretary's decision.

At the hearing before the Administrative Law Judge the claimant testified as to his symptomatology and pain. The claimant stated that he experienced pain in his legs, stomach, back and nose. He testified that he could neither see nor hear well and that certain bodily movements, such as sitting or standing, were sometimes difficult for him. He described how these ailments restricted his daily activities, for example, by preventing him from doing his own shopping and housework, and by requiring the presence of another person whenever he went out for any significant distance. The claimant also stated that he was sometimes unable to sleep and that he would work if he could.

Although a vocational expert, Dr. Morris Rubin, was also present at the hearing, the Administrative Law Judge determined that his testimony would not be required and he was not heard.

From the evidence as summarized above the Administrative Law Judge concluded that

The claimant's multiple impairments and allegations ... do not rise to a disabling level of severity, considered individually or considered in combination.

The claimant is of substantially reduced persuasiveness in the accuracy and reliability of his perceptions and evidentiary input with respect to his impairments and his residual vocational capacity.

The claimant possesses the residual capacity to engage in substantial gainful activity, including but not limited to his past work ....

Turning to the sequential evaluation prescribed by 20 C.F.R. § 404.1503 (1980), the Administrative Law Judge further stated:

a) Claimant has not reportedly [sic] engaged in any substantial gainful work since 2/77.

b) Claimant has certain impairments of vocational significance.

c) Claimant's impairments do not, individually or in combination, meet or equal any section of the listings at Appendix 1 of the regulations (20 CFR 404 and 20 CFR 416).

d) Claimant's impairments do not preclude him from performing his past relevant work; nor do they preclude him from performing all substantial gainful activity.

e) We do not reach the "grid" tables of Appendix 2.

In arguing that these findings do not rest on substantial evidence, counsel for the claimant asserts that (1) the claimant's visual and aural impairments require a finding of disability under 20 C.F.R. § 404, Subpart P, Appendix 1, 2.00A(1), (3), (6), and B(1); (2) the claimant's impairments prevent him from performing his past relevant work; (3) the Administrative Law Judge did not place sufficient emphasis on the claimant's subjective complaints; and (4) the Administrative Law Judge's observations and conclusions as to the claimant's pain based on the latter's demeanor at the hearing are impermissible. These contentions will be considered in the order stated.

Although the claimant does suffer from a visual defect, the finding of the Administrative Law Judge that the defect is not disabling is clearly supported by substantial evidence. According to the regulations, 20 CFR § 404, Appendix 1, 2.02 "[r]emaining vision in the better eye after best correction [must be] 20/200 or less" to require a finding of disability for that reason. But the claimant's best corrected visual acuity in the better eye was measured at 20/100 by Dr. Cohen. While restriction of visual fields to 2° would require a finding of disability under *id.* at 2.03(A), the claimant's ability to ambulate freely suggested to the doctor that his visual fields were not so restricted despite the results of the subjective testing. *Cf. Id.* at 2.00A(1) ("Loss of peripheral vision restricts the ability of an individual to move about freely"). In the words of Dr. Rinehart, "that Mr. Torres was able to ambulate without obvious difficulty [is] a finding inconsistent with 2° fields."

Moreover, Dr. Cohen stated that the physiological changes in the rear of the claimant's eye were mostly or entirely of congenital origin, a finding that casts strong doubt

on the claimant's assertion that his vision had deteriorated in the preceding two years. These changes, the doctor concluded, "were compatible with decreased vision and not with the degree of impairment which [the claimant] manifested." Thus, although the Administrative Law Judge apparently erred in believing that two or more of the eye specialists who examined the claimant regarded his allegations with "considerable skepticism," the error is harmless. The conclusions of Dr. Cohen were accepted by Dr. Rinehart and the claimant presented no medical evidence to the contrary. Had he done so the Administrative Law Judge might have chosen between the contradictory medical opinions and still reached the same conclusion, *Alvarez v. Califano*, 483 F.Supp. 1284, 1285 (E.D. Pa.1980), but as the medical testimony was uncontradicted, the Administrative Law Judge was not free to set his expertise against it had he desired to, *id. citing Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978).

Similarly, the Administrative Law Judge's finding that the claimant's impairments do not prevent him from performing past relevant work is supported by substantial evidence. The claimant's past work includes activities such as bending, walking, carrying, and lifting. At the heaviest reported work, claimant was sometimes required to carry supplies weighing forty to fifty pounds to other workers. According to the Physical Capacities Evaluation of Dr. Jerry Ginsberg, the claimant is able to bend, squat, crawl, climb, and reach "continuously." He is able to sit, stand, or walk for the full eight hours of an eight hour work day and can lift or carry weights of fifty to one hundred pounds "occasionally," twenty–six to fifty pounds "frequently," and lesser weights "continuously." These conclusions are supported by the x–ray examination administered by Dr. S. L. Hirsh, which found the claimant's chest, pelvis, and lumbrosacral spine region to be normal. Except for the diffuse and inconclusive notes made by Dr. Lucas, no medical evidence was presented to the contrary. Thus the Administrative Law Judge's decision

that the claimant is able to perform past relevant work is supported by substantial evidence. He was therefore also justified in not reaching the "grid" tables of 20 C.F.R. § 404, Subpart P, Appendix 2, *id.* at Appendix 2,200.00, and not requiring the testimony of the vocational expert. *See Williams v. Califano*, 590 F.2d 1332 (5th Cir. 1979). .

The claimant's third and fourth arguments center on the response of the Administrative Law Judge to his subjective complaints. Under *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), "the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors." The Administrative Law Judge in the present case did not neglect this obligation and specifically considered the pains and ailments as to which the claimant, and the claimant alone, testified at the hearing. However, he concluded that the "[c]laimant's testimony about his multiple impairments and allegations of pain and limitation was [sic] not, in a word, persuasive."

In particular, the Administrative Law Judge rejected the contention that the claimant suffered from any vocationally significant psychiatric impairment, noting that Dr. Ginsberg had observed no signs of mental disturbance sufficient to warrant a psychiatric evaluation. "If the [Administrative Law Judge] explicitly addresses the issue [of functional overlay] in his decision and his conclusion is supported by evidence he has the discretion to reject a claim." *Davis v. Califano*, 439 F.Supp. 94, 98 (E.D. Pa.1977). Counsel for the claimant cites numerous cases in arguing that the conclusion of the Administrative Law Judge should be overturned, but they are all inapposite. In a number of them the claimant had been diagnosed as a psychoneurotic or paranoid schizophrenic or as suffering from chronic anxiety, severe depression, or a severe organic mental impairment. See *Alvarez v. Califano*, 483 F.Supp. 1284 (E.D.Pa. 1980); *Bennett v. Califano* [1978–1979

Transfer Binder], Unempl.Ins.Rep. (CCH) ¶ 15,810 (E.D.Pa. March 29, 1978); *Morrone v. Secretary of HEW*, 372 F.Supp. 794 (E.D. Pa.1974); *Collins v. Richardson*, 356 F.Supp. 1370 (D.Tenn.1970); *Hall v. Gardner*, 286 F.Supp. 488 (D.Me.1968); *Rice v. Celebrezze*, 210 F.Supp. 718 (D.Ala.1962). In *Whitt v. Gardner*, 389 F.2d 906 (6th Cir. 1968), the Administrative Law Judge erred by requiring that the claimant's medical, clinical, or laboratory evidence be "objective." In *Poole v. Califano* [1978–1979 Transfer Binder], Unempl.Ins.Rep. (CCH) ¶ 15,588 (E.D.Pa. October 6, 1977), an examining doctor's recommendation that psychiatric testimony would be of "utmost importance" in evaluating the claimant was disregarded by the Administrative Law Judge. In *Batovich v. Gardner*, 286 F.Supp. 962 (W.D.Pa.1968), the Appeals Council erred in finding that a 57 year old coal miner, who was admittedly incapacitated as to that work by anthracosilicosis and other ailments, retained the capacity to perform other work where the evidence to that effect was "[t]he mere suggestion of a possibility of employment." Finally, in *Williams v. Califano* [1978–1979 Transfer Binder], Unempl.Ins.Rep. (CCH) ¶ 15,574 (E.D.Pa. September 23, 1977), the Appeals Council erred in failing to comment on new evidence submitted to it. None of these errors were committed here nor is there any evidence that the claimant suffers from an impairment of the nature and severity to come within the holdings of the above mentioned cases. On the contrary, the only evidence presented here in support of claimant's argument is the naked conclusion of Dr. Sumerson, the ear, nose, and throat specialist. Because it is the claimant's burden to prove that he suffers a disability within the meaning of the Act, *Blalock v. Richardson, supra; Gardner v. Richardson, supra*, and because the Administrative Law Judge's conclusion that he does not suffer from a psychiatric impairment of vocational significance is supported by substantial evidence, his conclusion must be sustained.

Secondly, as to the claimant's allegation of pain, under *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971), "even pain unaccompanied by objectively observable symptoms which is nonetheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits." However, as the "possibility of fabrication or exaggeration by claimants cannot be overlooked ... consideration [must be given] to the credibility of a claimant's testimony as to pain." *Davila v. Weinberger*, 408 F.Supp. 738, 743 (E.D.Pa.1976). Here the Administrative Law Judge specifically concluded that the "[c]laimant's testimony about his multiple impairments and allegations of pain and limitation was [sic] not, in a word, persuasive."

■ The conclusion of the Administrative Law Judge as to the claimant's credibility is supported by substantial evidence. The claimant produced no medical evidence that he was suffering pain of sufficient intensity "to meet the stringent test for disability imposed by the Act," *Shenk v. Califano*, [January–September 1980 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 16,957 (E.D.Pa. December 26, 1979). He presented no corroborating testimony by family or neighbors. *See Baerga v. Richardson, supra.* Further, he has been somewhat less than scrupulously honest in his dealings with the medical personnel who examined him. He stated to Dr. Cohen that he came to the continental United States two years ago when in fact he had been living here for more than a decade. The doctor's tests also provide a basis for doubting his allegations as to his ability to see. Finally, the Administrative Law Judge stated that his own "observations [of the claimant's demeanor at the hearing] are inconsistent with [his] allegations."

■ Counsel for the claimant argues that "the Administrative Law Judge's observations and conclusions are impermissible," *citing Roberts v. Califano*, 439 F.Supp. 188 (E.D.Pa.1977). In *Roberts* the Administrative Law Judge, in concluding that the claimant's pains were insufficient to support a finding of disability, stated that

When an individual has suffered severe, longstanding pain, there are observable

signs such as drawn features, significant weight loss, poor overall health and muscle atrophy because of physical inactivity in order to avoid discomfort.

*Id.* at 191. The Court described these statements as "an impermissible form of administrative notice," *id.* at 192, and remanded the case because an incorrect legal standard was applied in evaluating the evidence.

The Administrative Law Judge in the present case did not fall into this error. His statements on this point concern nothing more than observable phenomena, "which any fact–finder ... would be entitled to regard as proper 'demeanor evidence' of lack of pain." *King v. Secretary of HEW,* 481 F.Supp. 947, 949 (1979). The Administrative Law Judge stated:

> Our own observations suggest that the claimant was not experiencing at any time during the hearing any such severe, frequent or protracted pain or discomfort as to distract his attention, thought processes or concentration from the matters at hand.... The claimant's unrecorded posture, demeanor, tone and words failed to convey the ring of candor and sincerity that might be more convincing.

*See also Tyler v. Weinberger,* 409 F.Supp. 776, 789 (E.D.Pa.1976). ("It was within the Judge's discretion to draw conclusions as to the credibility of plaintiff's representations, as to the noticeable effects of his pain and suffering by scrutinizing those representations in light of the Judge's observations of plaintiff from the bench"). There is no error here.

■ Hence, the decision of the Secretary, as based on the record, should be affirmed. However, as mentioned above, the claimant has obtained new evidence regarding his eye condition in the form of a letter from Dr. Dennis J. Khoury of Hahnemann Eye Associates. This letter states that on May 7, 1980 "Mr. Torres ... had questionable light perception in the right eye and 20/200 in the left eye." The doctor also noted "a marked staphyloma of both posterior poles." These findings were confirmed by the July 11, 1980 examination and the doctor con-

cluded that "it was our feeling that [the claimant's] markedly decreased vision which could not be improved by any changing of the glasses was a direct result of a severe myopia."

As stated above, if "[r]emaining vision in the better eye after best correction is 20/200 or less," 20 C.F.R. § 404, Subpart P, Appendix 1, 2.02, a finding of disability is required under the "statutory blindness" provision of the Social Security Act, Section 216(i)(1)(B), 42 U.S.C. § 416(i)(1)(B); 20 C.F.R. §§ 404.1404, 404.1501(b)(1)(ii). Thus, Dr. Khoury's findings may support the claimant's contention that he is entitled to disability benefits.

■ Although this Court may not itself rely on these findings to reverse a decision of the Secretary, *Parks v. Harris,* 614 F.2d 83 (5th Cir. 1980), it may consider such evidence in determining whether the case should be remanded to the Secretary, *Neumerski v. Califano,* 456 F.Supp. 979 (E.D.Pa. 1978). Under the June 9, 1980 amendment to 42 U.S.C. § 405(g), a remand for the taking of further evidence before the Secretary may be ordered by this Court "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." No decisions have as yet been reported under the amendment. There are, of course, many cases construing the "good cause shown" provision of the earlier version of the statute. In this Circuit the prime considerations in deciding the "good cause" issue are "whether the evidence is not cumulative in light of those facts already before the Secretary and whether the Secretary's decision might well have been different had the evidence been presented to the ALJ." *Kane v. Matthews,* 583 F.2d 878, 881 (3d Cir. 1978). The "effect of the claimant's failure to present the evidence in the first instance" should also be considered as well as whether he "would be denied a fair hearing if the additional evidence is not made part of the record." *Id. See also Zielinski v. Califano,* 580 F.2d 103 (3d Cir. 1978); *Hess v. Weinberger,* 497 F.2d 837 (3d

Cir. 1974); *Neumerski v. Califano, supra;* *Schad v. Finch,* 303 F.'Supp. 595 (W.D.Pa. 1969).

Under the statute as amended the present case may not be remanded to the Secretary. Assuming that Dr. Khoury's letter is material, the claimant has not shown good cause for his failure to incorporate it into the record at a prior proceeding. As the claimant has been represented by counsel since June 4, 1979, the Administrative Law Judge was under no duty to fill out the record for him. *See Hess v. Weinberger, supra.* The May 31, 1979 report of Dr. Rinehart describing the claimant's visual impairment was addressed to counsel. This report states that the claimant's best corrected visual acuity in the better eye was 20/100. The statutory blindness requirements have not been altered throughout the period of time consumed by this case. Nor is there any evidence to suggest that the claimant's eye impairment includes a degenerative condition. *See Zielinski v. Califano, supra.* On the contrary, Dr. Cohen found the claimant's abnormality of the fundus to be congenital in origin. Claimant did not challenge this or any other medical finding as to his visual impairment, neither at the hearing before the Administrative Law Judge nor in his petition to the Appeals Council. Good cause for the failure to incorporate the evidence first presented here into the record at a prior proceeding cannot be found in light of these facts.

And that the statute as amended should be applied to this case seems clear. Although the amendment came into effect only after the claimant's administrative proceedings had been completed, the amendment is procedural, and it is well established that statutory changes that are procedural in nature apply retroactively unless the legislature has expressed a contrary intent or where retroactive application would be manifestly unjust. *See, e. g., Bradley v. Allen,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Moore v. Califano,* 633 F.2d 727 (6th Cir. 1980); *United States v. Vanella,* 619 F.2d 384 (5th Cir. 1980); *Yakim v. Califano,* 587 F.2d 149 (3d Cir. 1978); *Mahroom v. Hook,* 563 F.2d 1369

(9th Cir. 1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978); *Koger v. Ball,* 497 F.2d 702 (4th Cir. 1974); *Turner v. United States,* 410 F.2d 837 (5th Cir. 1969). However, the issue of whether the amendment should be applied retroactively need not be decided here as a remand is also unwarranted under the "good cause shown" standard as articulated in *Kane v. Matthews, supra.*

The evidence presented in Dr. Khoury's letter is cumulative in light of the facts already before the Secretary. The letter does not allege the existence of an impairment that was not considered by the Administrative Law Judge. *See Scott v. Califano,* 462 F.Supp. 240 (N.D.Ill.1978). It does not allege the existence or worsening of a degenerative condition that increasingly debilitates its victims. *See Gradzki v. Harris,* No. 79-C-3917 (N.D.Ill. September 18, 1980). Although Dr. Khoury used further medical techniques in evaluating the claimant's vision, including a Computerized Axial Tomography Scan, the results were unremarkable except in revealing "an abnormal shape to the posterior aspect of the [claimant's] eyes." *See Reams v. Harris,* 498 F.Supp. 802 (E.D.N.C.1980). The new evidence neither clarifies an earlier prognosis, *see Terio v. Weinberger,* 410 F.Supp. 209 (W.D.N.Y.1976), nor significantly modifies an earlier diagnosis, *see Brown v. Secretary of HEW,* 403 F.Supp. 938 (E.D.Wis. 1975). In short, the full extent of the difference between Dr. Khoury's findings and those before the Administrative Law Judge is that according to the former the claimant has "questionable light perception" in the right eye and 20/200 in the left while according to the latter he has no light perception in the right eye and 20/200 in the left. But "a desire to relitigate the same issues" cannot justify a remand under the "good cause shown" standard. *Bradley v. Califano,* 573 F.2d 28 (10th Cir. 1978).

Nor can it be supposed that the Secretary's decision might well have been different if Dr. Khoury's letter had been presented to the Administrative Law Judge. The letter does not clearly state that 20/200 is

the claimant's remaining vision in the better eye after best correction. *See* p. 526 *supra.* Assuming that the language quoted from Dr. Khoury's letter at page 526 above was intended to assert such a statement, its reliability must be questioned in the absence of any finding that could refute Dr. Cohen's conclusion that the claimant "clearly sees better than he thinks he sees." How Dr. Khoury might have removed the blemish in the claimant's credibility discovered by Dr. Cohen's obscenity test and otherwise is unclear, but his letter is also silent as to the claimant's ability to ambulate without difficulty and the degree of opticokinetic mystagmus present in each eye. Apparently Dr. Khoury did not examine the claimant as carefully as Dr. Cohen did.

The final *Kane* considerations, p. 526, *supra*, support the conclusions that the new evidence presented is insufficient to warrant a remand of this case to the Secretary under the "good cause shown" standard. The claimant is insured through June 30, 1982. He thus has the opportunity to present his new evidence to the Secretary by filing another application for disability benefits. And it is possible that by natural process of aging or decay the claimant's visual acuity is now accurately described by Dr. Khoury's measurements. That an adverse decision here precludes the claimant from obtaining benefits for the period ending with the hearing of January 29, 1980, *Satterfield v. Mathews*, 483 F.Supp. 20 (E.D.Ark.1979), *aff'd*, 615 F.2d 1288 (9th Cir. 1980), cannot alter this Court's judgment in the absence of any finding of a degenerative condition that might relate Dr. Khoury's measurements back to that time.

Finally, for the reasons stated above and on page 527, *supra,* the exclusion from the record of Dr. Khoury's letter, or any other evidence that could now be taken, is not to deny the claimant a fair hearing.

In accordance with this memorandum, the Secretary's decision will be affirmed. An appropriate Order will be entered.

### ORDER

AND NOW, this 4th day of December, 1980, the Court having considered the cross motions of the parties for summary judgment and the plaintiff's motion to remand, for the reasons set forth in the Court's Memorandum dated December 4th, 1980, hereby ORDERS that the plaintiff's motions for summary judgment and for remand are DENIED, defendant's motion for summary judgment is GRANTED, and judgment is entered in favor of the defendant, Patricia Roberts Harris, Secretary of Health, Education and Welfare and against the plaintiff, Luis Torres.