Elisha A. BENJAMIN, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 84–3617.

United States District Court,
D. New Jersey.

Dec. 30, 1987.

for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) benefits. The Secretary's decision is supported by substantial evidence; therefore, the decision below is affirmed.

Plaintiff, Elisha A. Benjamin, filed an application for a period of disability, disability benefits, and supplemental security income benefits on May 19, 1983. The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on February 16, 1984. The administrative law judge (ALJ) before whom plaintiff appeared considered the case *de novo* and on May 25, 1984, found that plaintiff was not under a disability. The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on August 7, 1984.

Subsequently, plaintiff filed suit in the United States District Court for the District of New Jersey. On August 12, 1985, the district court remanded the case to the Secretary for further administrative action. The Appeals Council, after vacating its denial of plaintiff's request for review, remanded the case to the ALJ on May 30, 1985. The ALJ held a hearing on December 19, 1985, and on April 18, 1986, issued his decision finding that the plaintiff was not under a disability. This decision became final on July 18, 1986, when the Appeals Council adopted the findings and conclusions of the ALJ's recommended decision.

Lawrence E. Kazmierczak, Oakland, N.J., for plaintiff.

Cornelia E. Dude, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

This is an action brought pursuant to § 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (Secretary) which denied plaintiff's application

 Disability is defined both for purposes of disability insurance and SSI benefits as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir.1985); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A person is disabled within the meaning of this statute "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The applicable standards for disability evaluation under § 423 are enumerated in 20 C.F.R. § 404.1520. These standards involve the weighing of four factors: (1) objective medical evidence; (2) diagnoses or medical opinions based on such medical facts; (3) the claimant's subjective testimony of pain and disability; and (4) the claimant's education, age and work experience. *Lizzio v. Secretary of Health, Education & Welfare,* 592 F.Supp. 683, 685 (D.N.J. 1982); *Torres v. Harris,* 502 F.Supp. 518, 521 (E.D.Pa.1980).

■ This court, empowered by 42 U.S.C. 405(g), may review the final determination of the Secretary and enter judgment upon the pleadings and transcript of record. It is beyond the narrow scope of this court's reviewing power, however, to reweigh the evidence upon which such a determination was based. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972). In reviewing findings of disability, any findings of fact of the Secretary must be accepted as conclusive by the reviewing court if supported by substantial evidence, *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir.1980), which has been defined as "more than a mere scintilla ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ To enable this court to perform properly its function of review, the administrative decision "should be accompanied by a clear and satisfactory explanation of the basis on which it rests," *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981); and "examiner's findings should be as comprehensive and analytical as feasible," *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). The ALJ should indicate not only the evidence which supports his or her conclusion, but also any "significant probative evidence" that was

rejected and the reasons for so doing. *Cotter v. Harris,* 642 F.2d at 705.

Plaintiff contends that the Secretary selectively considered only those portions of the record which support a finding of nondisability. However, it is the opinion of this court that the ALJ considered each of the medical and psychiatric reports submitted in support of plaintiff's allegations that the injuries he suffered in two automobile accidents render him disabled.

Plaintiff was born in Antigua, West Indies, on December 9, 1949, and emigrated to this country in 1968. After arriving in the United States, plaintiff worked as a bartender and waiter for several years. On August 29, 1981, plaintiff was involved in an automobile accident which left him hospitalized with a fracture of the left humerus and a laceration of the scalp. Surgical treatment consisted of an open reduction internal fixation of the fracture of the left humerus through a semi-open technique with a Rush rod. Cervical spine and skull X-rays taken at that time showed no fractures or arthritic changes in the spine.

After discharge from the hospital, plaintiff became the patient of Dr. Jerome Margolies, his current personal physician. Dr. Margolies stated that on September 17, 1981, plaintiff complained of pain, tenderness and spasticity in the left shoulder, right wrist and right ankle, both at rest and during range of motion tests. Plaintiff also complained of headaches and dizziness, which, in Dr. Margolies's opinion, were residual effects of the cerebral concussion plaintiff suffered during the accident. Dr. Margolies prescribed physical therapy and set up a course of neurological examinations. Dr. Margolies further noted that plaintiff's blood pressure was normal at this time.

On September 25, 1981, Dr. Munir Ahmed, plaintiff's treating physician at the hospital, examined plaintiff and determined that healing of the fracture was excellent, and a neurovascular examination showed nothing abnormal. Dr. Ahmed added that on October 23, 1981, X-rays showed excellent healing, with full range of motion and

no deformity whatsoever. At this time plaintiff was discharged from further care.

Six months later, plaintiff returned to Dr. Margolies complaining of the same symptoms, and physical therapy was resumed. Then, on January 24, 1983, plaintiff was involved in another accident, which resulted in injuries to his forehead, right eye, right jaw, right side of the neck, left hand, back of the neck and upper back. The record of an examination the following day indicated pain, tenderness and spasticity in the paravertebral muscles of the cervical and dorsal aspects of the spine at rest and during range-of-motion studies. As a result of this accident, plaintiff continued to receive physical therapy.

On June 2, 1983, plaintiff returned to the hospital. At this time, Dr. Ahmed determined that plaintiff's pain was caused by the Rush rod pressing against the acromium. The Rush rod was subsequently removed. Despite this treatment, plaintiff continued to complain of the same symptoms. On June 14, 1983, Dr. Margolies declared plaintiff totally disabled. Over the course of the next eight months, Dr. Margolies submitted several medical reports detailing treatment and evaluation of plaintiff's condition, each maintaining that plaintiff's condition was not improving and that plaintiff was still totally disabled.

In February, 1984, plaintiff consulted Dr. Rowland Goodman, who, after examining him, diagnosed plaintiff as suffering from hypertension triggered by his 1981 accident. Dr. Goodman recommended further orthopedic and neuropsychiatric examinations. Also in February, 1984, plaintiff consulted Dr. Milford Blackwell, a private neurologist, complaining of severe headaches, dizziness and "blackouts," which he claimed occurred twice a day. Dr. Blackwell concluded that plaintiff suffered from the aftermath of a brain concussion and that he was totally disabled.

During a psychiatric consultative evaluation conducted in March, 1984, Dr. James Ferretti found plaintiff slightly depressed, anxious and irritable. He noted plaintiff's auditory hallucinations, self-destructive ruminations and obsessive concern with his inability to work. Although Dr. Ferretti indicated that plaintiff was in need of psychotherapy and psychotropic medication, he also indicated that plaintiff did not suffer from schizophrenia or psychosis.

These findings by the plaintiff's physicians, however, were not consistent with other doctors' opinions. An orthopedic examination by Dr. Juluru Rao on March 6, 1984, disclosed that the claimant did not appear to be in any distress. In addition, Dr. Rao detected no tenderness of the shoulder and only minimal tenderness on deep palpation of the right ankle area. Further, plaintiff did not have any motor or sensory impairments in the lower extremities, and the neurological examination was within normal limits. Dr. Rao reported that plaintiff was able to walk, stand or sit for eight hours frequently and that he could do gross and fine manipulations with both hands.

A psychiatric consultant for the Department of Disability Determinations, Dr. Gerta Schwarz, examined plaintiff on July 5, 1985. Dr. Schwarz reported that plaintiff was charming, neatly dressed and well groomed. Plaintiff did not exhibit any signs of pain, physical or mental distress or depression. Dr. Schwarz found many discrepancies and vague details in plaintiff's account of the accidents and subsequent medical history and legal actions. Dr. Schwarz diagnosed hypertension, which could be controlled with medication, and anti-social personality behavior, particularly a disregard for the truth. Plaintiff, however, was found to have an unlimited ability to make the occupational, personal and social adjustments necessary to be gainfully employed.

Dr. Monica Mehta, also a consultant for the Department of Disability Determinations, examined plaintiff and issued a report on his medical condition on March 20, 1986. Dr. Mehta reported that plaintiff showed a marked weakness in his left arm and hand, but that there was no muscular atrophy. Dr. Mehta also noted that there was no evidence of any muscle spasm, joint pain, swelling or tenderness. Dr. Mehta stated that plaintiff's impairment did not

prevent him from standing, sitting and walking in a regular work environment, although his ability to lift and carry was restricted to a maximum of ten pounds.

Another consultant for the Department, Dr. Humberto M. Cravioto, a neurologist, examined the plaintiff on January 23, 1986. Dr. Cravioto reported that plaintiff did not appear to be in acute distress and was well oriented. He noted muscle weakness in the left arm and hand and pain in the left shoulder, elbow and wrist. Dr. Cravioto found no other evidence of pain or neurological disorders. Dr. Cravioto expressed the opinion that plaintiff was not willing to perform the required tests, thereby rendering the results suspect.

■ It is well settled that the Secretary is charged with responsibility for choosing among conflicting medical opinions in determining whether an individual is disabled. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Evosevich v. Consolidated Coal Co.*, 789 F.2d 1021, 1027–28 (3d Cir. 1986); *Newhouse v. Heckler*, 580 F.Supp. 1101, 1105 (E.D.Pa.1984), *rev'd on other grounds*, 753 F.2d 283 (3d Cir.1985). *See also* 20 C.F.R. § 404.1526. The Secretary may properly accept some parts of medical evidence and reject other parts, provided that he considers all the evidence and shows some basis for discounting the rejected evidence. *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981); *Winston v. Heckler*, 585 F.Supp. 362, 367 (D.N.J.1984). Although a treating physician's report is ordinarily entitled to some evidentiary weight, the ALJ is not bound to accept plaintiff's physician's conclusion without weighing it against other such evidence. *Baeder v. Heckler*, 592 F.Supp. 1489, 1492 (D.N.J.1984), *aff'd*, 768 F.2d 547 (3d Cir.1985). Based on the above, the ALJ acted within his authority by considering all of the medical evidence and accepting that which he deemed most compelling.

■ Contrary to plaintiff's contention that no vocational evidence was proffered at the hearing, the ALJ paid particular attention to the testimony of two vocational specialists. Mr. Edmond Provder, expert for the plaintiff, expressed an opinion that plaintiff suffered from a disability resulting from a combination of emotional and physical factors. The ALJ dismissed this opinion, noting that Mr. Provder lacked the medical and psychiatric expertise to render such an opinion.

The ALJ also received testimony at the supplemental hearing from Ms. Anna Mooney, a vocational expert from the panel approved by the Secretary of the Department of Health and Human Services. Ms. Mooney testified that, despite plaintiff's impairment, there exist a significant number of sedentary, unskilled jobs in the national economy which plaintiff could perform without hardship, as they could be performed with one hand. Included among the pertinent jobs were grinding machine operator, stringing machine tender, laminator in the leather industry, label picker in the fabric industry, strap buckler in the garment industry and tipping machine operator in the manufacture of umbrellas. Such jobs would require the plaintiff to remain seated six to eight hours daily, occasionally standing and lifting a maximum of ten pounds with one arm. It should be noted that the ALJ acknowledged plaintiff's own testimony that he could lift ten to fifteen pounds with his right hand, and five pounds with his left hand.

There is no question that plaintiff suffers from a major impairment of his left upper extremity. The question before the ALJ was whether this impairment was sufficient to render plaintiff permanently disabled. The ALJ examined all the evidence, including the reports of the two vocational specialists. After careful consideration, the ALJ determined that plaintiff has a limited range of motion of his left shoulder, decreased grip strength, diminished muscle strength and some decrease in gross and fine finger manipulation. The ALJ also found, however, that plaintiff had not lost complete use of his extremity, and that none of his alleged complaints met the disability requirements under the Act within

269

the meaning of 20 C.F.R. 404.1520(f). Disability, therefore, was denied.

In the present case, plaintiff met the burden of proof of showing that he had not worked since August 29, 1981. Upon finding that a claimant is not engaged in a substantial gainful activity, the ALJ must determine, solely on the basis of medical evidence, whether the impairment(s) meets or equals a listed impairment in 20 C.F.R. Appendix 1, Subpart P, Reg. No. 4, of the Regulations. If the impairment is listed or is the equivalent of an impairment listed in Appendix 1, the claimant is found disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). If, however, determination cannot be made on the basis of medical facts alone, then the ALJ must evaluate the claimant's residual functional capacity in comparison to the physical and mental demands of the individual's past work. If the ALJ determines that the claimant possesses the residual functional capacity to perform his or her past work, then the claimant is found not disabled. 20 C.F.R. § 404.1520(e). In the present case, the ALJ found that plaintiff did not meet the impairment standards set forth by 20 C.F.R. Appendix 1. He also found, however, that he did not have enough residual functional capacity to return to any of his old occupations. The ALJ did find that plaintiff was capable of performing a series of jobs that did not require lifting more than ten to fifteen pounds with his right hand, and more than five pounds with his left.

Plaintiff claims error in this finding, contending that it is not supported by substantial evidence in the record. I find ample evidence in the record to support the ALJ's decision, including the findings of Drs. Schwarz and Cravioto, both of whom questioned plaintiff's veracity and willingness to perform certain tests which they considered him capable of performing.

In light of the medical evidence presented and plaintiff's testimony, I believe the finding of the ALJ is supported by substantial evidence. For the reasons stated above, the decision of the Secretary is af-

firmed. An order accompanies this opinion. No costs.