**Darrell CZUBALA, Plaintiff,**

**v.**

**Margaret H. HECKLER, Secretary of Health & Human Services,\* Defendant.**

**Civ. No. H 77–371.**

United States District Court, N.D. Indiana, Hammond Division.

Nov. 7, 1983.

---

\* Pursuant to Federal Rules of Civil Procedure 25(d)(1), we substitute the name Margaret H. Heckler, successor to the original defendant, Joseph A. Califano, Jr., as Secretary of the U.S. Department of Health and Human Services, formerly Health, Education & Welfare. 20 U.S.C. § 3508(b).

George Glendening, Hammond, Ind., for plaintiff.

Carmen M. Piasecki, Charles B. Miller, Asst U.S. Atty., Hammond, Ind., David T. Ready, U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM OF DECISION and ORDER

MOODY, District Judge.

Claimant-plaintiff, Darrell Czubala, brought this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services ("Secretary"), granting a closed period of disability and for disability insurance benefits under Title II of the Act, and denying supplemental security income benefits based on disability under Title XVI of the Act.

## PROCEDURAL HISTORY

Claimant filed applications on September 4, 1975 seeking benefits under Title II and Title XVI of the Act alleging he became unable to work on May 30, 1975, at age twenty. (R. 82, 85). The applications were denied initially and on reconsideration. (R. 86, 90–91). Subsequently, the Administrative Law Judge, ("ALJ") before whom claimant, his attorney, his parents, and a vocational expert appeared, considered the claims *de novo*, and on June 23, 1977 found that claimant was entitled to a closed period of disability and disability insurance benefits from May 30, 1975 to April, 1977. No decision was made as to claimant's entitlement to Title XVI benefits. (R. 7–14). The ALJ's decision became the final decision of the Secretary when the Appeals Council approved it on September 27, 1977 (R. 3).

## STATEMENT OF FACTS

Claimant was born May 9, 1955 and has completed the twelfth grade (R. 28–29). He alleges disability as of May 30, 1975 due to paralysis of the left arm resulting from a stab wound (R. 82–85). Prior to receiving the wound, claimant worked as a grocery clerk and bagger, a laborer, a ditch digger, and a sewer cleaner (R. 30–32). The Secretary has concluded claimant was under a disability from May 30, 1975 to April, 1977, but not thereafter.

Claimant was hospitalized on May 23, 1975 for stab wound treatment. He complained of severe pain in the arm and hand with obvious cyanosis and some questionable swelling of the left hand. Exploration by a vascular surgeon, Dr. Gasior, showed transsection of the ulnar and medial nerves and the brachial artery. Re-anastomosis of the brachial artery was performed. After the operation, claimant complained of severe pain which required heavy narcotic and tranquilizer dosages. An attempt at secondary closure of the injured area was impossible, but a skin graft was applied. Claimant progressed normally; however, some diminution of pulsation of the radial artery was found, and claimant was transferred to another hospital.

Examinations conducted during claimant's first hospitalization showed normal, except for the left upper extremity. Claimant had a two inch laceration on the posterior aspect of the left arm. There was marked swelling and ecchymosis of the entire upper arm, especially the anterior aspect. Claimant had cyanosis of the arm distal to the site of the injury and definite limitations of motion in flexion and dorsiflexion, but he was able to dorsiflex fingers weakly. Pulses were absent in the wrist. The impression was that there was hematoma formation, possibly interrupting the venous drainage from the area distal to the stab wound. Also, there was probable severance of the brachial artery and the ulner and median nerves and questionable partial severance of the radial nerve (R. 111–112). Claimant took physical therapy during his hospital stay and briefly thereafter. He

had a normal range of active motion in his left shoulder, lacked 25 degrees from complete elbow extension, and had a slight problem with forearm supination. Hand function was poor; the muscle around the MP joint was weak and he complained of mild to moderate sensation loss in the left hand below the wrist. Claimant was given active assistance and resuscitative exercises to the left shoulder, elbow, wrist and hand (R. 107).

Hospitalization continued from June 13, 1975 to June 18, 1975. A subclavian angiogram showed occlusion in the left brachial artery with collateral circulation providing the blood supply to the forearm. The radial recurrent and anterior and posterior ulner recurrent arteries were seen around the elbow joint. The impression was complete occlusion of the brachial artery (R. 164). EKG studies showed a terminal conduction variant which may be consistent with a person of claimant's age (R. 165–167). EMG of the upper extremities and back showed A–1 plus fibrillation and/or positive sharp waves in the brachiordialis. There was diminished motor unit recruitment in several muscles, but none showed complete denervation (R. 168). NCV studies showed that no evoked muscle potentials could be illicited (R. 169). No surgical procedures were performed during this hospitalization (R. 161).

Claimant's physician during his second hospitalization, Dr. Robert Gasior, a general and thorasic surgeon, sent two letters to Dr. Joseph Tyrrell. The first, dated June 8, 1975, reported claimant had palpable radial pulse, but indicated that changes in claimant's hand were a result of neuromuscular dystrophy. There was expected atrophy of the lumbricals and the interossii. EMG demonstrated activity in the previously repaired nerves (R. 154). The second letter, dated June 19, 1975, reported claimant had a patent profunda brachii artery which, via the ulner recurrent artery, supplies the distill branchial radial ulner complex. Claimant had a warm hand and a pulsate radial artery. EMG nerve velocities studies were recommended; to be followed by secondary repairs (R. 155).

Claimant was hospitalized again from August 18, 1975 to August 30, 1975. Since claimant's previous hospitalization he experienced gradual improvement in motor strength and sensation of his forearms and fingers; however, causalgic pain had gotten progressively worse in the fingers (R. 121). Physical examinations showed heart, lungs, and abdomen normal. There was atrophy of the arm, forearm, and other small muscles of the hand. Wrist and finger flexion were weak, and deep tendon reflexes were good except for the left upper triceps. Neurological exam showed claimant's mental status, cranial nerves, and cerebellum intact. Sensory exam revealed analgesia in the ulner nerve distribution on the left, with some median nerve involvement on the hand and a positive Tinel's sign below the injury (R. 121). Nurses noted that the left arm was weaker, and that he was not able to grasp, but able to partially close his hand. Sensation was intact in the upper half of the arm. Claimant could not distinguish pin pricks and felt prickling pain in the left fingertips (R. 123). The pulse at the wrist was decreased on the left and the flexors were weak, but the extensors were normal (R. 127). Claimant had a left cervical sympathetic block performed on August 29, 1975, and he appeared to have the return of some ulner and median use. X-rays taken during this hospitalization showed a normal chest and multiple surgical clips were noted in the soft tissues.

Dr. Joseph Tyrrell, a general surgeon, filed a consultive report on October 24, 1975. He reported that as of July 18, 1975, claimant had no pulsation in the left wrist, but general circulation seemed adequate, although his hand was cool and dry. Claimant took pain and nerve medications at that time, and physiotherapy was prescribed. The left hand shows signs of lumbrical and interossii atrophy. Claimant's prognosis for complete return of the function of the left hand was guarded to poor. The doctor felt claimant was not employable (R. 157).

The Secretary contacted two of claimant's physicians. Dr. Guandique was contacted on January 5, 1976 and reported that claimant's left hand was non-functional, that there was an absence of radial pulse, and, that claimant experienced pain in the upper left arm and left hand (R. 146). Dr. Gates was contacted on January 8, 1976 and stated that surgery for tendon transfer of the left hand was planned in approximately four to five months, and that prognosis for complete recovery of his left hand was practically zero, although surgery may allow claimant to pick up the telephone (R. 147).

Dr. Guandique, a specialist in neurological surgery, filed a report dated July 26, 1976, stating claimant's pain appeared causalgic in nature. There was atrophy to the ulner and median nerve, the prognosis was poor (R. 170–173).

Dr. Marvin Bernard, a specialist in neurological surgery, filed a medical report on December 17, 1976. He reported claimant had a claw left hand with withered and atrophic muscles. Claimant had exquisite pain and could not close the hand. EMG of the left arm indicated no continuity of either ulner or radial nerves. Stellate ganglion block showed temperature improvement of the left arm. EMG showed some recovery of the left ulner nerve function but no motor recovery. Dr. Bernard scheduled claimant for a second median nerve anastomosis some time "after the holidays". Dr. Bernard opined that claimant was totally incapacitated at the time and faced the possibility of losing a portion of his left arm or hand (R. 184–185).

At the ALJ's hearing, claimant testified he needed an artery transplant (R. 34). He testified he cannot pick up objects with his left hand (R. 42), and that he has pain from the left forearm down into the dorsal aspect of the hand, with concentrated pain in the last three fingers (R. 46). This pain was constant, and claimant stated he took medication. Claimant uses a heating pad irregularly, but constantly in cold and humid weather. Claimant wears a double glove (one glove inside another) to protect his hand (R. 47–49). His daily activities include watching TV, listening to the radio, visiting friends, and going for walks. Claimant feels that he could drive a car with power steering (R. 40–53).

Claimant's mother testified she assists her son in buttoning his shirt, putting on stockings, tying his shoes and cutting meat. She testified he constantly wears a heating pad (R. 54–57).

Vocational expert, Dr. David Frank, Ph.D., responding to the ALJ's hypothetical, testified that if claimant's left arm could not be used at all, preventing performance of two-handed tasks, and if claimant needed to wear a heating pad and glove constantly, then claimant would be prevented from doing his former work, or any light or sedentary work (R. 63–64). However, Dr. Frank stated that if claimant did not need to constantly wear the glove and pad, then there were ten to twenty-two categories of light to sedentary work which claimant could perform. Moreover, Dr. Frank testified these jobs were available in significant numbers not only in claimant's current locality, but also in the Southwest, where the climate would not aggravate claimant's pain (R. 64–72). Responding to claimant's attorney, Dr. Frank testified that claimant would be suited for low entry work, for which compensation averages in the bottom ten to fifteen percent (R. 79).

The Secretary concluded claimant met the insured status requirement of Title II of the Act as of May 30, 1975. Since the Secretary found claimant's disability as of that date, claimant's insured status is not an issue in this appeal or in claimant's claim to Title XVI benefits.

On June 23, 1977 the ALJ made the following findings and conclusions:

1. The claimant met the special earnings requirements on May 30, 1975.

2. The claimant stated that he was born May 9, 1955, completed twelve years of schooling, and has worked as a laborer in various jobs and as a stock boy and bagger.

3. The claimant has the following impairments:

A. Traumatic and neuropathy to the left median and ulner nerves, with causalgia.

4. The claimant's impairment would prevent him from returning to any of his past employment.

5. The claimant's impairment does not now prevent him from engaging in substantially gainful activity of the light and sedentary nature.

6. The evidence establishes that the claimant's impairment prevented him from engaging in any substantially gainful activity continuously from May 30, 1975, until April, 1977, but not thereafter.

7. Considering the claimant's residual functional capacity and his young age, education, work experience and training, he is now able to perform jobs which are present in significant numbers in the region where he lives and in several regions of the country; *e.g.*, he is able to perform jobs such as messenger, ticket taker, order clerk, light delivery truck driver, tool crib operator, meter reader, conveyor belt product inspector, central supply clerk, hotel/motel desk clerk, self-service gas station attendant, and a variety of other light or sedentary jobs.

8. The claimant was under a "disability", as defined in the Social Security Act, as amended, within the meaning of Title II and Title XVI of the Act, commencing on May 30, 1975 and continuing until April, 1977, but not thereafter.

The ALJ decided, based on claimant's application filed September 4, 1975, that claimant is entitled to a period of disability commencing May 30, 1975, and to disability insurance benefits under Section 216(i) and 223, respectively, of the Act; and based on the ALJ's findings that disability ceased in April, 1977, entitlement to a period of disability and disability insurance benefits ended with the close of June, 1977. The ALJ further decided that, while the claimant met the requirements for "disability" based on the application filed on September

4, 1975 under Section 1614(a)(3)(A) of the Act, from May 30, 1975 until April, 1977 when his disability ceased; he made no findings regarding claimant's eligibility for benefits under Title XVI of the Act. (R. 12–14).

Claimant's Motion for Summary Judgment of March 28, 1978 argues he proffered substantial evidence to prove his disability had not ceased, and therefore, he is entitled to disability and supplemental security income benefits. Alternatively, claimant argues for remand to submit evidence of subsequent hospitalizations to prove his disability continued after April, 1977. Claimant claims this new evidence, supported by his mother's statements, found in an affidavit attached to the Motion, constitutes "good cause" for remand.

The Secretary's Motion for Summary Judgment of August 10, 1979 argues claimant's disability ended in April, 1977. The Secretary argues that loss of a hand's use is not a disability *per se;* pain can be a disability but the claimant failed to bear his burden of proof; the vocational expert's testimony enumerated available jobs; and, because of claimant's youth he is capable of substantial gainful activity. The Secretary contends that because of the foregoing reasons, claimant is not disabled.

### ISSUES

I. Whether the Secretary's decision is supported by substantial evidence.

II. Whether good cause exists to remand for the introduction of new evidence.

### DISCUSSION

■ The ALJ denied claimant's benefits under both Title II and Title XVI of the Act. Specifically, the denial included: disability insurance benefits under Section 223(d); a period of disability under Section 216(i); and supplemental security income benefits under Section 1614(a)(3). A "disability" must be established under all three sections. Section 223(d)(1) defines "disability" as:

[T]he inability to engage in substantial gainful activity by reason of any medical-

ly determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months ... an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. For purposes of the proceeding, 'in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

In reviewing a case, this Court cannot try the case *de novo*, but must instead examine the entire record to determine if the Secretary's decision was legally correct and was supported by substantial evidence. *Kelly v. Weinberger*, 391 F.Supp. 1337 (N.D.Ind. 1974).

## ISSUE I SUBSTANTIAL EVIDENCE

The standard on review is whether the Secretary's findings are supported by substantial evidence, and whether the correct administration procedures were followed. 42 U.S.C. § 405(g). The Court's duty is to examine the entire record to ascertain if the decision is supported by substantial evidence. *Rayborn v. Weinberger*, 398 F.Supp. 1303 (7th Cir.1975). The Supreme Court in *Richardson v. Perles*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972), defined substantial evidence as "... more than a mere scintilla. It means such relative evidence as a reasonable mind might accept as adequate to support the conclusion."

In Social Security cases, the burden of proof is upon the claimant to establish the existence of his disability. *Rayborn, supra;* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).

It is settled law that the burden of proof rests upon the claimant to establish his entitlement to disability insurance benefits under the Act. *Kelly, supra; Jeralds v. Richardson*, 445 F.2d 36 (7th Cir.1971).

■ The three step analysis to be followed in determining disability claims is set forth in the principal statute, 42 U.S.C. § 423. The first issue the ALJ must decide is whether claimant has proved the existence of a medically determinable physical or mental impairment of the requisite longevity. Then, the ALJ must determine if the claimant's impairment is "of such severity that he is unable to do his previous work." Once the claimant has established the above two items, a *prima facie* case has been made and the burden then shifts to the Secretary to prove by substantial evidence that there is other work claimant is able to perform. *Small v. Califano*, 565 F.2d 797 (1st Cir.1977); *Hernandez v. Weinberger*, 493 F.2d 1120 (1st Cir.1974). Once the burden has shifted to the Secretary, it must be shown, considering claimant's age, education and work experience, skills and physical shortcomings that he has the capacity to perform an alternative job. Second, this job must be shown to exist in the national economy. 42 U.S.C. § 423(d)(2)(A).

■ In the case *sub judice*, claimant proved his disability from May, 1975 to April, 1977. He proffered substantial evidence to show his inability to return to his previous employment or engage in other gainful activity during that period. Claimant met his requisite burden of proof. Accordingly, the Secretary correctly found claimant disabled.

Claimant argues, however, that his disability continued after April, 1977. He claims, because of the limited use of left hand and arm, pain, and use of a heating pad in cold or humid weather, he is still unable to return to his previous employment or engage in other gainful activity.

Claimant's evidence proved that after April, 1977 he was unable to return to previous employment because it required

ambidexterity. Upon this showing, the burden of proof shifted to the Secretary. The Secretary met her burden through the vocational expert's testimony. He testified that claimant retained the residual capacity to perform numerous light and sedentary jobs in several areas of the country. These jobs amount to "substantial gainful activity." Claimant's evidence does not convince us that his impairments preclude him from all employment. The Secretary's substantial evidence proved claimant's ability and residual capacity. Since the Secretary's decision is supported by substantial evidence it is conclusive. *Bledsoe v. Richardson,* 469 F.2d 1288 (7th Cir.1972). However, we remand this case to allow claimant to introduce new evidence.

## ISSUE II  REMAND FOR INTRODUCTION OF NEW EVIDENCE

Claimant argues for remand, pursuant to 42 U.S.C. § 405(g), claiming new and substantial evidence of hospitalization subsequent to the ALJ's hearing prove his disability. The proper procedure in such cases is outlined by the Act, 42 U.S.C. § 405(g):

> The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

The present Section 405(g) resulted from a June 9, 1980 amendment to the Social Security Act, Pub.L. 96–265, Title III, § 307, 94 Stat. 458 (1980). The previous version of § 405(g) stated that the court could "... at any time, on good cause shown, order additional information to be taken by the Secretary....", whereas the new version permits such a remand only upon a showing of new and material evidence as well as good cause why the evidence was not incorporated into prior proceedings. Although the amendment became effective after the close of administrative proceedings in the present case, we must, in the absence of contrary Congressional directive or of evidence that retroactive application would be manifestly unjust, treat the amendment as applicable. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638 (2nd Cir.1983); *Ward v. Schweiker,* 686 F.2d 762 (9th Cir. 1982); *Chaney v. Schweiker,* 659 F.2d 676 (5th Cir.1981).

The Court stated in *Barnard v. Secretary of Health and Human Services,* 515 F.Supp. 690 (D.C.Md.1981), citing *Torres v. Harris,* 502 F.Supp. 518 (E.D.Pa. 1980) "... that the amendment restricts somewhat the availability of remand does not preclude its application ...." As the *Torres* court noted, this is a procedural, not a substantive change. Statutes affecting procedural change may be applied retroactively unless the legislature intended otherwise or unless a manifest injustice would result. There is nothing to indicate Congress did not intend application to all cases pending in the District Courts.[1] We agree that there is no evidence in the legislature's history that the new provision of § 405(g) should not apply to cases pending in this Court on June 9, 1980. Therefore, we adopt the rule of the Fifth Circuit and Ninth Circuit[2] and apply the new provisions of Section 405(g).

Accordingly, applying Section 405(g), claimant has the burden to show that the proffered evidence is new and material and that there is good cause for his failure to incorporate such evidence into the prior proceeding's record. This burden is a continuous one. *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). It neither shifts nor ends after the initial determination of dis-

---

1. The House Conference Report on Section 307 of the 1980 Amendment (the new version of § 405(g)) states that: "'the Conference agreement includes this provision [modification of the old 'good cause' requirement] of the House and Senate bills effective upon enactment.'"

House Conference Report No. 944, 96 Cong., 2d Sess. 59, *reprinted in* [1980] 3 U.S.Code Cong. & Ad.News 1277, 1392, 1407.

2. *Chaney, supra; Ward, supra.*

ability has been made. When the Social Security Administration determines that a claimant's disability has ceased, the burden of proof to establish otherwise lies with the claimant. *Patti v. Schweiker*, 669 F.2d 582, 586 (9th Cir.1982); *Gonzalez v. Harris*, 631 F.2d 143, 145 (9th Cir.1980).

Several courts have construed the purpose of Section 405(g), and resultingly the claimants' burden, very narrowly. In *Brown v. Schweiker*, 557 F.Supp. 190 (M.D. Fla.1983), citing *Birchfield v. Harris*, 506 F.Supp. 251 (E.D.Tenn.1980), the court took a very critical view of claimants who move for remands to the Secretary on the grounds of new evidence. "Many claimants have used this new evidence gambit as an informal method of appealing an adverse ruling by the Secretary.... Because of this tactic many claimants might withhold medical reports, or at least not acquire them timely, with the idea of obtaining another 'bite at the apple' if the Secretary decided that the claimant was not disabled". Congress clearly intended to cut back on the number of cases remanded by the District Courts. *See*, Senate Report 96–408. Good cause remand should be narrowly circumscribed, so that undue delays do not burden appeals in this type of case. Senate Report 96–408. The *Brown* Court further held:

> ... This procedural type of remand merely instructs the Secretary to refine the decision making process. Just because the case is returned to the Secretary does not mean that all evidence entered subsequent to the original administrative hearing should be considered. Because of the Congressional policy favoring speedy disposition of these types of cases, and because of the need to set some definite date in which the Secretary can look at all the relative evidence.

*Brown* at 194.

More recently, the Second Circuit addressed the purpose of Section 405(g) in *Carroll*. That Court emphasizes the importance of limiting remands without good cause to carry out Congress's mandate "to foreshorten the often painfully slow process by which disability determinations are made." *Id.* at 644.

Claimant argues that we should remand this case allowing the introduction of additional evidence to prove his disability did not cease in April, 1977. Claimant seeks to proffer evidence of three hospitalizations subsequent to the ALJ's hearing. He argues these hospitalizations will prove his disability did and has continued. Mindful of the narrower scope of Section 405(g) and its necessary requisites, we remand with instructions.

As stated, claimant has a continuing burden to prove his disability has continued. Additionally, on remand, he may only submit new and material evidence for good cause shown.

■ The important questions in applying amended Section 405(g) are whether the evidence is new, material, and there is good cause for claimant's failure to introduce the evidence at previous proceedings. Evidence is new if it was not and could not have been presented at the prior proceeding. *Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir.1981). In *Goerg*, the Court granted remand to introduce new medical evidence obtained between the ALJ's hearing and the Appeal Council's review. The Court reasoned that the evidence of a new disease should "on its face" (*i.e.*, its date) show that it could not have been proffered earlier. *Cagle v. Califano*, 638 F.2d 219 (10th Cir.1981) echoes this reasoning: it held the evidence was "new" if it was not cumulative or repetitive. In *Cagle*, the claimant argued to present evidence of surgery performed within months of the ALJ's hearing. The Court held remand was proper if the "face of the evidence" evidenced it was not available beforehand.[3]

■ In the case *sub judice*, we find claimant meets the "new evidence" require-

---

**3.** *Accord, Chaney, supra*, (Cumulative evidence cannot be new evidence); *Barnard, supra*, (Evidence describing a present worsened condition is new evidence. However, remand was denied because the new evidence was not material.)

ment of Section 405(g). Claimant testified at his hearing that he needed further surgery (R. 33–37). By affidavit, claimant's mother testified to claimant's hospitalizations subsequent to the hearing.[4] The evidence of these subsequent hospitalizations is new because it falls within the rubric set out above. That is, since the hospitalization occurred after the hearing, evidence of them did not exist and thereby could not have been presented at the hearing. The dates of the evidence comply with the "on the face" requirements. Further this new evidence is not repetitive or cumulative because it reports totally new and independent events. Therefore, claimant fulfills the requirement germane to "new evidence". Additionally, he must now prove his new evidence is also material and show good cause for its failure to be proffered earlier.

Claimant must also prove the requisite element of materiality before proffering new evidence. Discussing the materiality of new evidence under amended 405(g), the Fifth Circuit [5] opined:

The concept "material" suggests that the new evidence must be relevant and probative.[6] However, not every discovery of new evidence, even if relevant and probative will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administration costs and delays of a new hearing. Thus we hold that a remand to

the Secretary is not justified if there is no reasonable possibility that it would change the outcome of the Secretary's determination.

In *Chaney,* claimant argued to submit 400 pages of new medical evidence. Claimant alleged a hospital had misplaced the documents and repeated earlier requests for production failed. The Fifth Circuit directed the district court to use the foregoing "materiality" standard.

The Tenth and Fourth Circuits have adopted a less restrictive "materiality" standard. These Circuits find material evidence as "evidence reasonably likely to have resulted in a different decision by the Secretary." [7] See, *Cagle v. Califano,* 638 F.2d 219 (10th Cir.1981); *King v. Califano,* 599 F.2d 597 (4th Cir.1979).

In *Cagle,* the court remanded with directions to the district court. In that case claimant underwent new surgery within months after the ALJ's hearing. Because of the close proximity of this surgery to the hearing the matter was remanded because the court felt this was a new situation that would "reasonably support a different decision.".

A recent case merits note. In *Ward v. Schweiker,* 686 F.2d 762 (9th Cir.1982), the ALJ found in 1975 that claimant was no longer disabled due to her lumbar disc condition and related orthopedic problem. In 1980, claimant proffered medical evidence

**4.** According to the affidavit appendant to claimant's Motion for Summary Judgment, claimant was hospitalized in August, 1977; September, 1977; and, January, 1978. Affidavit paragraph numbered 3A refers to claimant's hospitalization in March, 1977. This was three months prior to the ALJ's hearing and therefore is not new evidence and is not considered here. Further, affidavit paragraph numbered 3D refers to hospitalization due to a suicide attempt. Because this has a questionable nexus to claimant's original claim, it is new evidence but it is not material. *See infra.*

**5.** *Chaney,* 659 F.2d at 679.

**6.** In a case decided before the 1980 Amendment, the Fifth Circuit held that:
[t]he Social Security Act is to be broadly construed and literally applied. Consistent with

the interpretation of the Act "[c]ourts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of claimant's application."
*Williams v. Califano,* 590 F.2d 1332, 1334 (5th Cir.1979) (*quoting Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2nd Cir.1975)). *See, Epps v. Harris,* 624 F.2d 1267, 1283 (5th Cir.1980); *Accord, Schlabach v. Secretary of Health and Human Services,* 469 F.Supp. 304 (N.D.Ind. 1978).
*Chaney,* at 679.

**7.** The *Chaney* court specifically declined to endorse this standard.

of myasthenia gravis diagnosed in 1980, and records of concomitant hospitalization. Claimant argued this evidence proved her disability had not ceased. The *Ward* Court denied remand because the new evidence failed to meet the "materiality" requisite of amended Section 405(g). The court stated:

> In light of the cessation date of May, 1975, claimant would be required to show that she had myasthenia gravis for almost five years before it was diagnosed in 1980. The medical evidence offered by claimant contained no finding that she suffered from myasthenia gravis during the period of coverage.... Claimant has not supplied any indication that she would be able to make such a showing if given the opportunity to present additional evidence to the Secretary. Without more, the evidence claimant offers does not warrant remand because it is not material to the Secretary's decision in terminating benefits in 1975.... The new medical evidence was not material to the Secretary's action in terminating benefits as of 1975, although it could form the basis for a new claim.[8]

*Id.*, at 765.

The Court reasoned that because the new impairment was immaterial to the questions *sub judice*—whether claimant's disability ceased in 1975—there was no good cause for remand.

Combining *Chaney* and *Ward,* we believe new evidence is not material if it is without nexus to the matter in dispute. It is not enough to merely show the new evidence bears directly and substantially on the issue in dispute, or is merely relevant and probative. Although the new evidence in *Ward* may have been relevant and probative to the existence of the disability, it was insufficient to justify remand because there was no reasonable possibility of changing the Secretary's decision. In *Barnard v. Secretary of Health and Human Services,* 515 F.Supp. 690 (D.Md.1981), the Court denied remand because the newly proffered evidence, regarding the worsen-

ing of claimant's condition, was not material. There, the Secretary denied claimant benefits in January, 1980. In May, 1981, claimant filed a motion to remand for additional proceedings, in light of the worsening of his condition since the ALJ's hearing. Attached to the motion was claimant's affidavit, stating his condition had deteriorated. Also appended was a letter from claimant's doctor stating claimant suffered from degenerative arthritis which has been constant and progressive. The Secretary responded to the motion by ascertaining that claimant has not shown "good cause" for remand in that the medical report does not add facts that would tend to alter the decision. The Secretary further asserted that claimant's present condition had no bearing on the correctness of its decision at the time it was rendered. The court said:

> The first question, in applying amended Section 405(g), is whether there is new evidence that is material. Plaintiff's affidavit and Dr. Miles' letter present evidence that is new in that they describe claimant's present, worsened condition. The only statement in the affidavit that relates at all to his prior condition is Dr. Miles' introductory remarks that he has been treating plaintiff for degenerative arthritis since December, 1978 and that the condition is constant and progressive. To the extent that this statement is evidenced at all, it was before the ALJ and the Appeals Council in prior proceedings in the report of Drs. Sanderin and Miles, and the ALJ found it as one of plaintiff's impairments.
>
> Plaintiff and Dr. Miles described plaintiff's condition at the present time, the plaintiff as of April 29, 1981 and Dr. Miles as of February 23, 1981. These statements of plaintiff's condition, which has apparently worsened, are not material to the question whether plaintiff was disabled at the time of the Secretary's decision which became final on January 10, 1980.... Plaintiff's condition may have so worsened that he is disabled

---

8. In fact, claimant reapplied for disability and supplemental security income benefits in 1980 and was found to be disabled only as of September, 1979.

now, over a year after the Secretary's final action. As the Secretary notes, the new medical report may support an application for benefits covering a later time period. Under Section 405(g) as amended, however, the question is whether the new evidence is material to the Secretary's disability determination, not whether there may be reason to render a different decision now.[9]

*Barnard* at 694.

In the case *sub judice*, the Secretary granted claimant benefits for a closed period ending in April, 1977. The Secretary held that claimant's arm injury and resulting hospitalizations prevented him from engaging in any substantial gainful activity from May 30, 1975 until April, 1977. Therefore, claimant was disabled under the Act only during that period. Further, the ALJ was on notice of further scheduled surgery. Since claimant argues for remand claiming his disability continued after April, 1977, evidence of subsequent surgery and hospitalizations regarding his arm injury is material to the Secretary's original determination. Any evidence of other ailments or impairments or of a worsened condition are not considered here as they could only be material to a separate claim.

We find claimant's evidence regarding subsequent treatment to his arm is of substantial value to justify remand because it is reasonably possible that the Secretary's original determination could change. This evidence directly relates, and is material to, the original issue of when claimant's disability ceased. Accordingly, claimant met his burden establishing the materiality of his new evidence. Therefore, on remand, claimant may submit new evidence relative to his disability's continuation, but nothing more.

Pursuant to Section 405(g), as amended, the third requisite for remand is a good cause for the failure to incorporate the new proffered evidence into the prior record. The mere nonexistence of the evidence at the administrative hearing is an insufficient explanation. There must be more.

In *Brown*, claimant offered the court eight new medical reports. The Magistrate recommended remand simply because the reports were not made until after the hearing. The court held: "this is not the type of 'good cause' required by Congress under the amended form of Section 405(g). Plaintiff has not explained why these reports were not included in the record of the prior proceedings ... she has not shown why they were not presented to the Secretary in the late evidence procedures found in 20 C.F.R. §§ 404.957, 404.958." In *Birchfield v. Harris*, 506 F.Supp. 251 (E.D.Tenn.1980), the Court held:

> Claimant should not be able to get a new hearing after an adverse decision by the Secretary just by withholding certain reports, then asking for a remand on "new evidence" grounds. At some point in time there must be a definite record upon which the Secretary can make a decision. If remands are permissible every time a party gathered new evidence which might affect the outcome of the case, no determinations would ever occur. In order to facilitate the speedy disposition of meritorious claims, "new evidence" remands should be narrowly circumscribed.

Claimant's explanation of his failure to incorporate the evidence into prior proceedings is the criterion to be used, not merely the date on which claimant obtained the evidence. In *Cagle*, remand was allowed for evidence of surgery subsequent to the hearing. The claimant argued he did not previously offer the evidence because it did not exist and therefore, could not have been obtained. *Accord Goerg, supra; Chaney, supra* (where hospital had misplaced claimant's records yielding them unavailable at the hearing.)

Here, the claimant's administrative hearing occurred in June of 1977. Claimant now asks to offer evidence of hospitalization in August and September of 1977. The dates of this evidence, convince us that it did not exist, and therefore, could not have been incorporated in the June, 1977 record. More importantly, not only did the hospital reports not exist, they were unob-

---

**9.** This discussion is distinguished from degenerative diseases which can establish a disability

*per se. Gradzki v. Harris*, No. 79–C–3917 (N.D. Ill. Sept. 18, 1980).

tainable in June of 1977 because the events reported therein had yet to transpire. These two factors in combination fulfill the requisite good cause in explaining prior unincorporation.

### CONCLUSION

Claimant meets his burden for remand. The evidence he wishes to now offer is new and material, and, he shows good cause for failure to previously incorporate. Claimant's memorandum argues for remand to determine if his disability continued after April, 1977. The evidence of his subsequent hospitalizations for treatment of injured arm should be considered by the ALJ in determining claimant's disability cessation date.

### ORDER

Accordingly, IT IS ORDERED that the March 28, 1978 Motion for Summary Judgment filed by claimant be and it is hereby DENIED. IT IS FURTHER ORDERED that the August 10, 1979 Motion for Summary Judgment filed by defendant be and it is hereby DENIED. IT IS FURTHER ORDERED that this case be REMANDED for further proceedings consistent with this opinion.