**Ruben PEREZ, Plaintiff,**

v.

**Margaret H. HECKLER, Secretary of Health and Human Services,\* Defendant.**

Civ. No. 79–02.

United States District Court, N.D. Indiana, Hammond Division.

Feb. 29, 1984.

---

\* Pursuant to Federal Rules of Civil Procedure 25(d)(1), we substitute the name Margaret H. Heckler, successor to the original defendant, Joseph A. Califano, Jr., as Secretary of the U.S. Department of Health and Human Services, formerly Health, Education & Welfare.

Lettice M. Otero, Gary, Ind., for plaintiff.

David T. Ready, U.S. Atty., Charles B. Miller, Asst. U.S. Atty., Hammond, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

MOODY, District Judge.

Claimant-plaintiff, Ruben Perez, brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the Secretary of Health and Human Services' final decision denying him a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Act.

### ADMINISTRATIVE PROCEEDINGS

Claimant applied for a period of disability and for disability insurance benefits on August 24, 1977 alleging that he became unable to work in July, 1977. The application was denied initially and on reconsideration by the Social Security Administration finding claimant was not disabled. Claimant requested a hearing which was held March 3, 1978. The Administrative Law Judge (ALJ) considered the claims *de novo* and on October 3, 1978 found that claimant was not under a disability. The ALJ's decision became the Secretary's final decision when the Appeals Council approved it on November 6, 1978.

On September 15, 1980 both parties presented oral arguments before the Hon-

orable James T. Moody, United States Magistrate. The Cross-Motions for Summary Judgment were taken under advisement.

### STATEMENT OF FACTS

Claimant was born in Puerto Rico in 1935; completed nine years of education; and, has worked at Youngstown Steel in roll assembly since 1955. He alleges a disability as of July, 1977 due to a left knee injury and eye problems.

Claimant, with his union representative Lewis C. Thomas, testified at the ALJ's hearing. He testified that a June 2, 1977 knee injury forced him to reduce his work to "light duty" until July 2, 1977, at which time he was unable to work at all. Notwithstanding his knee surgery in July, 1977, claimant alleges that he is in constant pain and cannot put any weight on his left leg. Further, claimant states he was told he is "industrially blind". Claimant testified he can read and write Spanish, although his English is "not too good". He drives, and states he always wears glasses, although he did not have them at the hearing. His average day includes watching television, reading, and driving to physical therapy. He sleeps well, tends to his personal needs, and is without use limitations of fingers, elbows, wrists and shoulders.

Medical evidence indicates claimant had surgery by Dr. Aron on July 2, 1977 to repair a torn left knee medial meniscus. Claimant was discharged "improved and healing well" on July 13, 1977 after an uncomplicated recovery. In January, 1978 Dr. Aron's rediagnosis was complete disuse atrophy of lower left extremity. Although prognosis was poor, Aron encouraged claimant to undergo physical therapy.

Claimant submitted a cursory fill-in-blank-type report from Dr. R. Carmody indicating probable retinitis pigmentosa. No other reports evidencing claimant's vision problems were submitted.

Dr. A. Yeretsian's psychiatric evaluation revealed claimant is anxious about being unemployed and depressed about its result-

ing impecuniosity. Claimant told Dr. Yeretsian he was scared about changing jobs and needed money from Social Security. The doctor stated that claimant does not suffer from dilusions or hallucinations. The diagnosis was no significant psychiatric disorder other than mild anxiety.

An opthalmologist, Dr. P. Giles, examined claimant May 9, 1978 and reported that claimant's uncorrected vision was R 20/200 and L 20/160. Eye muscles functioned properly and were without any disease process. Although claimant's distance vision was correctable to 20/25 and 20/80, Giles was unable to explain this amount of vision loss by objective findings.[1]

Dr. J. Vincent's March 23, 1978 report indicates claimant is disabled in his lower left extremity, walked with a cane, complained of pain, but lacked swelling. Vincent proffered no evidence from clinical tests.

Dr. Leo Roth, an orthopedic surgeon, examined claimant and reported that claimant complained of pain, walked poorly, used a cane, experienced minimal atrophy and swelling. X-rays revealed no evidence of skeletal injury. Although Roth could not find any objective reasons to account for the degree of claimant's alleged disability, he diagnosed claimant with minimal osteoarthritis.

On October 3, 1978 the ALJ made the following findings and conclusions:

1. The claimant filed an application for a Period of Disability and Disability Insurance Benefits on August 24, 1977 alleging disability from July 2, 1977.

2. The claimant met the special earnings requirements of the Social Security Act, as amended, on July 2, 1977 the date of the alleged disability and continues to meet them through the date of this decision.

3. All jurisdictional and procedural requirements entitling claimant to a hearing have been met or waived.

---

1. The industrial blindness threshold is 20/200.

4. The claimant testified that he was born on April 18, 1938 and completed nine years of schooling and has work experience at a roll assembly mill at the Youngstown Sheet and Tube and has also reached the rank of E–7 in the Indiana National Guard.

5. The claimant has the following impairments: a sore left knee, post arthroscopy and impaired vision.

6. These impairments moderately limited the claimant.

7. Claimant retains the residual functional capacity to perform sedentary work. The Administrative Law Judge administratively notes the existence of the following jobs that claimant can perform: gate guard, assembler of small machines and applicanceś, (sic) and packager of cosmetics.

8. The claimant was not prevented from engaging in substantial gainful activity for a continuous period beginning on or before the date of this decision which has lasted or can be expected to last for a period of at least 12 months.

9. Claimant was not under a disability as defined in the Social Security Act at a time prior to the date of this decision. (R. 11–12).

The ALJ, based on the application filed August 24, 1977 found that claimant was not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Act.

Claimant's January 10, 1980 Motion for Summary Judgment argues that he proffered objective clinical evidence supporting complete disuse of his left knee. Further, he alleges that the ALJ's decision is not supported by substantial evidence because the ALJ did not adequately consider his pain relative to his ability to engage in substantial gainful activities. Finally, he argues that this Court should reverse the Secretary's decision, thereby granting him benefits, because he was not represented by an attorney at the hearing.

The Secretary argues in her August 8, 1980 Motion for Summary Judgment that the mere presence of an impairment does not entitle a claimant to benefits. Here, the Secretary agrees that claimant has a problem with his knee and eyes and experiences pain. However, since these impairments are not so severe as to preclude all substantial gainful activity, claimant cannot be granted benefits. Moreover, the Secretary argues that claimant's allegations of pain are not supported by objective medical evidence. Although claimant's medical problems are recognized, they do not preclude all substantial activity. Therefore, claimant does not meet the statutory definition of disability.

On September 15, 1980 claimant presented two arguments before the Honorable James T. Moody, United States Magistrate. Claimant charges that his union representative was inadequate and therefore the ALJ was remiss in not aiding him to more fully developing the facts at the hearing. Further, claimant charges that the ALJ made no effort to inform him of the availability of adequate legal assistance. Accordingly, claimant claims these facts deprived him of a full and fair hearing.

Second, claimant claims that the ALJ's decision is not based on substantial evidence. Specifically, Dr. Aron's report states his lower left extremity is disabled; and, Dr. Giles states that he is industrially blind. Moreover, claimant claims the ALJ did not properly consider his pain as an impairment.

## ISSUES

I. Whether the hearing procedures were fair and lawful.

II. Whether the Secretary's decision is supported by substantial evidence.

## DISCUSSION

### I. SUBSTANTIAL EVIDENCE

A successful claimant for disability insurance benefits under 42 U.S.C. § 423(a)(1) is required to be under a disability. Disability is defined as an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Further, a physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Under Section 423(d)(5), an "individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." *Johnson v. Weinberger,* 525 F.2d 403 (7th Cir.1975).

Claimant has the burden of proving the existence of a disability. However, once a sufficiently severe impairment is demonstrated, which precludes previous employment, the burden of going forward shifts to the Secretary to prove other available kinds of "substantial gainful employment" claimant can perform. *McNeil v. Califano,* 614 F.2d 142 (7th Cir.1980); *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 861 (7th Cir.1978). Claimant asserts that he has carried the burden. He argues that his leg and eye problems constituted a statutory "disability". The Secretary found contra.

Review of the Secretary's findings is limited to a determination of whether the findings are supported by substantial evidence based on the record as a whole. *Schmoll v. Harris,* 636 F.2d 1146, 1149 (7th Cir. 1980); *Carver v. Harris,* 634 F.2d 363, 364 (7th Cir.1980). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir.1977) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ As the Court observed in *McNeil v. Califano,* 614 F.2d at 145: " ... we are restricted by this section (42 U.S.C. § 405(g)) to an evaluation of the administrative decision." The Court should consider the following guidelines for aid in such an evaluation:

(1) clinical findings of treating and examining physicians on the existence of medically determinable physical or mental impairment;

(2) opinions of treating or examining physicians on subsidiary questions of fact relating to the severity of the medically determinable impairment;

(3) testimony of the claimant, corroborated by his family and neighbors concerning the effect of the medically determinable impairment;

(4) evidence of the claimant's educational background, work history and present age.

*Johnson v. Weinberger,* 525 F.2d 403 (7th Cir.1975).

■ Our evaluation of the whole record convinces us that the Secretary's decision is supported by substantial evidence. The Secretary found claimant's impairments had not been so severe as to render him unable to engage in all substantial gainful activity for a continuous period of twelve months, therefore, he was not under a disability. Moreover, based on the evidence, claimant has the capacity to perform a wide range of substantial gainful activities.

Although claimant has some limitations because of his knee and eye problems, he has not furnished objective medical evidence to prove they are of the requisite statutory severity to preclude all substantial activity, thereby entitling him to disability benefits.[2] The record evidences claimant's confusion regarding his burden of proof. He repeatedly states that his impairments preclude him from returning to his former employment at Youngstown Steel Company. Further, he argues that the Company will not permit him to return

---

**2.** 20 C.F.R., Subpart P, App. 2 § 200.00(c); Rule 201.24 Table No. I, App. 2, Subpart P of Reg. No. 4.

to their employ. Although we believe this to be true, these facts alone do not prove claimant is disabled under the Act. As stated above, claimant must prove that his impairments preclude him from all substantial gainful activity. Claimant has failed to proffer objective medical evidence to this effect. Therefore, we can neither consider claimant disabled, nor can we consider the Secretary's decision unsupported by substantial evidence.

However, since this case will be remanded on other grounds, claimant must rectify the record's evidentiary inconsistencies, *inter alia*, claimant's industrial blindness, his driving ability, his need for eye glasses, need for medication, upper digital limitations, and, language barriers.

 Claimant postures himself to be industrial blind. He stated at the hearing, "the doctor for Youngstown told me that I was industrial (sic) blind in my eyes." (R. 37, 1. 14–15). He reiterated this on his request for hearing, stating, "... the company doctor said I have 'industrial blindness' ". (R. 95). On remand, if claimant's eye impairment is to be considered, he must provide objective medical evidence from the aforementioned "company doctor" or some other source to prove his industrial blindness. Claimant's statements alone cannot be considered conclusive of an impairment.

Claimant testified that he has a valid Indiana driver's license which is restricted only if he does not wear his glasses. (R. 42). However, he further testified that a "doctor" said he could not drive; and he himself told Dr. Yeretsian he could not drive because of his eyesight. (R. 43, 139). Claimant told the ALJ that he drove the day before the hearing. The ability to drive may be important to a determination of claimant's ability to engage in substantial gainful activity. Accordingly, on remand, claimant should clear the ambiguity of whether he can drive, and if his restrictions are greater than that of merely wearing his glasses. Further, if a doctor has told him that he cannot drive, claimant

must submit evidence substantiating that claim.

The use of fingers, elbows, wrists and shoulders is important in determining work ability. Claimant testified that he does not have any limitations in these areas. (R. 69). However, he contrarily testified that he was, in fact, limited in their use. (R. 134). On remand claimant must explain this contradiction and evidentiarily buttress any limitations he might have.

Finally, claimant's counsel suggests that claimant was deprived of a fair hearing because of his inability to understand English. Although we find no evidence of this in the record, if claimant's attorney believes an interpreter is needed, she should be aware that one can easily be arranged.

## II. FULL AND FAIR HEARING

 Section 205(g) of the Act authorizes this Court to remand this case for further administrative proceedings. Remand must be based on good cause or deficient full and fair hearing procedure. 42 U.S.C. § 405(g); *Kelly v. Weinberger*, 391 F.Supp. 1337 (N.D.Ind.1974). It is a basic obligation of the ALJ to develop a full and fair record; failure to do so authorizes remand for further hearings. *Smith v. Secretary*, 587 F.2d 857 (7th Cir.1978). The Supreme Court has not recognized a Constitutional right of representation at a Social Security hearing. *Goodman v. Richardson*, 448 F.2d 388 (5th Cir.1971). Nevertheless, a claimant has a statutory right to counsel at such hearings. 42 U.S.C. § 406. This right is effectuated by regulation 20 C.F.R. § 404.971. In order to effectuate this regulation, the Secretary is obliged to notify the claimant of the right of representation at the hearing. *Clark v. Schweiker*, 652 F.2d 399 (5th Cir.1981).

 It is well established, however, that lack of representation, by itself, is not grounds for remand. *Smith, supra*. The Seventh Circuit has held that in addition to lack of representation, the claimant must show "a clear prejudice or unfairness." *Sykes v. Finch*, 443 F.2d 192 (7th Cir.1971).

Courts have tended to examine the original hearing from two quite different perspectives in deciding whether a claimant was prejudiced or otherwise disadvantaged by lack of representation. The first focuses on the quality of the two major actors, the ALJ and the claimant, and looks to whether the ALJ was biased or otherwise unfair, or whether the claimant was incompetent. The second focuses on the hearing itself and looks to whether the record was developed and whether the case was presented adequately.

■ In the case *sub judice*, claimant's lack of legal counsel deprived him of a full and fair hearing. Mr. Lewis C. Thomas, vice-president of Local 1011, United Steel-workmen, represented claimant. However benevolent Mr. Thomas' intentions might have been, the record is replete with evidence of his legal ineptness. The record obviates that Mr. Lewis did not understand the case, the proceedings, the standards, or the requisite proof. The following is exemplary:

. . . .

ALJ: Are you prepared to proceed this morning on behalf of Mr. Perez?

MR. THOMAS: I am.

ALJ: You may do so.

MR. THOMAS: Well, first of all, I would, you know, like to know from the—from what the record indicate here, specific why that Mr. Perez was dismayed (phonetic)—denied his Social Security disability benefits?

AJL: Pardon me?

MR. THOMAS: I said I would like to know why, you know, specific why he was denied his . . . benefits. (R. 31).

. . . .

CLAIMANT:[3] Okay. You know, I'd like for the record to show that I'm not an medical, you know, expert; and I'm here, you know, to represent Mr. Per-

ez, and on the base of the fact and my knowledge what I have or know about industrial workers. (R. 33).

. . . .

MR. THOMAS: You know, the union feel that Mr. Perez should qualify for, you know, Social Security benefit. And I'm not speaking from medical terminology or anything of that nature because I don't have the practice or the experience or the knowledge. (R. 35).

. . . .

MR. THOMAS: Well, I think that Mr. Perez, you know, work record in the plant of his twenty-three years, indicate that's, you know, that he like to work and earn his living.

He had a outstanding work record, no, no absenteeism, and he, you know, worked, you know, some overtime and what-have-you. That (inaudible)—

. . . And I would like to really compliment, you know, the hearing officer here, you and the young lady, because I think that, from what I gather, that you're going to recommend, you know, a few—other profession to take a look at Mr. Perez.

And I believe that Mr. Perez, you know, rather be made whole or recover from his injuries and get back and make a living on his own instead of, you know, depending on Social Security, of that nature.

So I'm really impressed, you know, with this. I think that you was fair. You gave us an opportunity to express ourselves and ask any question, anything that we had to add, other than the exhibit here, that, you know, I really can't find any fault, you know.

And it's somewhat of a new experience, you know, with me, you know, to sit before you; but I think that it's something that in this system, American system here, that we do have a

3. Context obviates that this statement should be attributed to Mr. Thomas, and not Mr. Perez-

claimant.

democratic society and freedom of speech, and then we believe in fair play, and (inaudible). (R. 79–80).

. . . .

The foregoing convinces us that Mr. Thomas did not understand claimant's case, was unaware of his role, and believed that Social Security standards were the same as those used by his union. Therefore, we conclude that for all intents and purposes claimant was without legal representation at the hearing.

Further, we believe the record evidences substantial prejudice to claimant because of the ALJ's bias and nonjudicial conduct. This Court commends the ALJ for his unparralled introduction. Rarely has this Court seen such an enthusiastically conscientious and complete explanation of a Social Security Hearing system. (R. 25–29). However, his enthusiasm's contagion soon became overwhelming and ultimately turned into pontificatingly biased conduct which well exceeded judicious parameters. The following evidences the ALJ's bias:

ALJ: I'm a little curious about that. Now, you had the same operation that Dick Putkins[4] (sic) had about nine years ago, and he went back and played football for two seasons on this knee. (R. 38).

. . . .

Q: (Referring to claimant's children) You got them, four between eighteen and fourteen (years of age)?
A: Yes, sir.
Q: Good Man.... (R. 40).

. . . .

A: ...A doctor told me not to drive.
Q: Did he tell you that he would supply you with a chauffeur? (R. 43).

. . . .

Q: Who was it that told you to walk with the cane in your left hand?
A: No one.

Q: Exactly. Tell the people at the Youngstown Hospital to take their cane and rap themselves over the head with it. If they're going to give you a cane, they should at least teach you how to use it for help with your knee.

And the knee, if the left side is hurt, the cane should be in the right hand... You might as well wear spats as carry that cane if you're going to use it in the wrong hand. (R. 45).

. . . .

Q: One doctor tells you you can't drive. Another one tells you you can't work. And I say, do they tell you who's going to drive you and who's going to feed your family? (R. 57).

. . . .

You're walking with a cane like an old man here, and athletes get over that type of thing. (R. 58).
Q: Do you get the physical therapy? ... How often?
A: Well, I was taking it almost every day last month, and this month I took it for three weeks, two, three times a week. And this week I went once, one, that was yesterday.
Q: And your company pays for it?
A: Yes, sir.
Q: And you're no better?
A: I'm not better, no.
Q: They're crazy for throwing away their money.... (R. 67).

. . . .

Q: I know you don't help with the housework.
A: No, I don't.
Q: You never helped with the housework. That's not the Puerto Rican man's bag.... (R. 67).

. . . .

Q: Now, in spite of the problem you have with you head, ... (R. 71). (No

**4.** The record later indicates that this player is Dick Butkus.

evidence was submitted regarding psychiatric problems, this statement evidently evidences the ALJ's own medical diagnosis).

. . . .

Q: Have you been referred to the Indiana Department of Vocational Rehabilitation?

A: Not yet, no.

Q: Somebody blew it. . . . (R. 73).

. . . .

Q: Your doctor is full of malarkey if he says your eyesight is bad, after that demonstration. (R. 77). (The ALJ personally tested claimant's eyes by asking him to read a clock across the courtroom.)

These non-judicious comments are well beyond the scope of the ALJ's role and are unnecessarily prejudicial. The ALJ's role does not include commenting on other professional's competence, diagnosing by comparison, intimidating, or, making derogatory remarks regarding claimant's ethnic background or sexual prowess. We are convinced that this prejudice deprived claimant of a full and fair hearing. Although we agree that the Secretary proffered substantial evidence to support the denial of benefits, we cannot overlook the prejudicial effect of claimant's lack of representation and the ALJ's irreprehensible conduct. Therefore, pursuant to 42 U.S.C. § 405(g), this case must be remanded for a new hearing.

■ On remand, however, claimant is instructed to closely follow the guidelines for the admission of new evidence set out by this Court in *Czubala v. Heckler,* 574 F.Supp. 890 (N.D.Ind.1983). That is, claimant may submit new evidence substantiating his disability only if it is new and not cumulative; material to his condition as of March 3, 1978; and, there is good cause for not having offered it earlier.

## ORDER

Accordingly, it is ORDERED that the Motions for Summary Judgment filed by plaintiff and defendant be and they are hereby DENIED. It is FURTHER ORDERED that this case be REMANDED to the Secretary for new administrative hearing.